SARAH E. KEENE ET AL v. MEYER LOWENTHAL.

SPECIFIC PERFORMANCE. *Sale of lands. Statute of frauds. Code 1892,* § 4225(c). *Writings. Letters to writers agent.*

Statements made by the owner of land to the effect that he will sell the same to a designated person contained in private letters of the owner to his broker in regard to the latter's fees are not alone sufficient to sustain a bill brought by such person for specific performance of a contract of sale.

FROM the chancery court of Warren county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

Lowenthal, appellee, was complainant, and Mrs. Keene and others, appellants, were defendants there. From a decree in complainant's favor the defendants appealed to the supreme coiurt. The opinion of the court fully states the facts.

*Dabney & McCabe and N. B. Feld,* for appellants.

The original bill in this case was filed upon the idea solely that Lowenthal was entitled to have a deed made to him by reason of the receipt given by Paxton to him for $25.00, No-

vember 18, 1902. The amended bill sets up the receipt and also the correspondence between Mrs. Keene and Paxton, who was acting as broker and agent for both parties in the matter, although he intimated in his testimony that he was acting alone for Mrs. Keene.

On the trial of the case in the chancery court the complainant's (appellee's) solicitors freely admitted that Lowenthal was not entitled to any rights or benefits by reason of the receipt, which was called "the argument," notwithstanding they had relied on that in the original bill solely, and largely, apparently, in the amended bill; but they abandoned entirely all pretense of right under that receipt for the reason (1) that they conceded that there was no authority in Paxton to give that receipt and bind Mrs. Keene thereby, and (2) that she had no information of the fact that said receipt had been given, and hence could not be held to have ratified it. We have been assured by opposing counsel that they will make the same admission here, and hence we have not deemed it necessary to argue the proposition that Mrs. Keene is not affected at all by that receipt. We will, however, refer the court to the case of *Everman* v. *Herndon,* 71 Miss., 823.

The correspondence between Paxton and Mrs. Keene does not constitute such a contract in favor of Lowenthal as entitles him to specify performance in the case. The correspondence relied on is the letter of November 25, enclosing the deed to her and her answer of December 17, in which she says: "As soon as I receive notice from the bank that the money is there waiting for me I will sign the deed and then you will get your money by the first of January." There are two reasons we submit why this correspondence does not constitute a valid and binding contract. In the first place, there was really no consideration. The check for $25.00, which had been previously sent, was without reference to this correspondence or anything contained in the letter which accompanied the deed; and, moreover, there is no evidence that she ever accepted it. She certainly never used

the check because she returned it and it is in the files in this case now. She had no notice whatever of the receipt or agreement in connection with which this check was given.

In the second place, in her letter of December 17, relied on, she simply says she will sign the deed; she nowhere says she will deliver the deed.

In this connection, we ask the court to read the letter of Paxton accompanying the deed. It will be noted that she is requested to execute it before a clerk having a seal, after which she is requested to return the deed to the American National Bank of Vicksburg, with instructions to deliver the deed on the payment of $5,000.00, etc. It cannot be said, therefore, that she was ignorant of what she was expected to do and what she was wanted to do. The letter was before her with instructions as to what she was to do if she proposed to comply with their request. Yet, with this letter staring her in the face, she says what? Why, she says she will sign the deed. One of the first things taught the law student is, that a deed is a paper conveying land, which is signed, sealed and delivered. Of course, it will be argued that the intention manifested in this letter is that she would execute the deed and deliver it, but the language of the letter is not doubtful. The court should remember that Lowenthal has expended no money whatever in this matter. He has every cent of money which he had in the beginning, and he is claiming the enforcement of the letter of the law as he understands it. It cannot be said that there are any equities especially in his favor, because he has parted with nothing.

There is a letter written by her subsequent to the institution of the suit some time, referring to Mr. Paxton's conduct in the matter, in which she refers to the former correspondence as being an agreement to sell. Reference may be made to this in the brief of opposing counsel, and we desire to say concerning it, that whatever she may have said in her subsequent correspondence amounts to nothing more than the idea at that time of the legal effect of her correspondence. It can neither add to nor

take from the effect of the correspondence as it shows for itself. Admissions are valuable in respect to disputed facts, but when the facts are fully known the construction of their legal effect by one of the parties amounts to nothing.

*Brunini & Hirsh,* for appellee.

We contend that, irrespective of "the argument" which is signed by C. B. Paxton, agent, there is a good and binding contract, evidenced by the correspondence between Mr. Paxton and Mrs. Keeene, and the deed which was sent Mrs. Keene by Mr. Paxton in his letter dated November 25, by which Mrs. Keene can be compelled to convey to Mr. Lowenthal. It is true that the negotiations were conducted through Mr. Paxton, and that we have to rely for our contract upon the correspondence passing between him and Mrs. Keene and said deed, but if the correspondence and said deed are sufficient to show a binding contract, nothing further can be required. If we have two deeds to a piece of property and one of them be good and the other bad, certainly we can rely on the one which is good.

The question now to be determined is, have we satisfied the statute of frauds? Section 4226, Code 1892, provides that "an action shall not be brought whereby to charge a defendant or other party upon any contract for the sale of lands, tenements or hereditaments, or the making of any lease thereof for a longer term than one year, unless the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized."

"A letter and its answer may constitute a sufficient memorandum of sale to entitle the purchaser to specific performance." 22 Am. & Eng. Enc. Law (1st ed.), 976, and note, together with the cases there cited.

"It is absolutely essential that the letters should be addressed by one of the parties to the other." 22 Am. & Eng. Enc. Law (1st ed.), 976, and cases there cited.

"The record of the resolutions of the board of supervisors sufficient memorandum." 22 Am. & Eng. Enc. Law (1st ed.), 976.

"A as B's agent wrote to C proposing to purchase for B land owned by C and his brothers. C wrote a letter accepting his proposal. These letters were enclosed to B, and he wrote to A thanking him for the purchase. C and his brothers brought a bill for the specific performance of the contract. Held, that the contract could be enforced." *Wyeth* v. *Mahoney,* 32 Gratt. (Va.), 645.

The case of *Hollis et al.* v. *Burgess,* rendered by the supreme court of Kansas on November 5, 1887, 15 Pac. Rep., 536, is on all fours with the case before the court.

"The terms of a contract may be derived from letters to third persons connected with the transaction, and the statute of frauds will be complied with. *Bristol* v. *Mente,* 80 N. Y. (Sup.), 52.

The case of *Rector* v. *Sauer,* 69 Miss., 235, indirectly holds the same.

The case of *Lee* v. *Cherry* (Tenn.), decided May 4, 1887, 4 S. W., 835, is another case directly in point. In this case the court say: "This is a bill for a specific performance of a contract for the sale of a lot in the city of Memphis. The only question necessary to consider is as to whether the sale is sufficiently evidenced by a writing to take it without the statute of frauds. It is not essential that the contract of sale shall be in writing, provided there is produced a writing containing the terms of the oral contract, authenticated by the signature of the party to be charged.

"Several different writings may be read together as constituent parts of a memorandum within the statute of frauds, where, when they are viewed together in the light of the situation and circumstances of the parties at the time they were written, they show unmistakably that they relate to the same matter, and constitute several parts of one connected transaction, although there is no expressed reference from one to the other."

*White* v. *Breen,* (Ala. L. R. A. Book, 32 p. 127). The foregoing is a well reasoned case.

The case of *Bayne* v. *Wiggins* is similar to ours, in that the contract was evidenced by letters taken in connection with the deed referred to in the correspondence.

"Letters in which the parties agree to the exchange of real estate but which do not describe the property, constitute a sufficient compliance with the statute of frauds, requiring contracts for the sale of lands to be in writing when considered in connection with the deeds to be exchanged, though one of the deeds is not delivered." *Leonard* v. *Woodruff* (Utah), 65 Pac., 199.

If a paper signed by the party to be charged, makes a reference to another writing as that, construeing them together, all the terms of a bargain are expressed, it is sufficient under the statute of frauds, and parol evidence is admissible to identify the paper referred to and apply the reference. *Wilkinson* v. *Taylor Mfg. Co.,* 67 Miss., 231.

"Parol evidence is inadmissible to connect writings, but is admissible to identify the writings referred to." *Alabama, etc. Ins. Co.* v. *Oliver,* 2 So. Rp. 445; *Forst* v. *Leonard,* 20 So. Rep. 587; *Swallow* v. *Strong,* 85 N. W., 942; *Eggleston* v. *Wagner,* 10 N. W., 47; *Wilkinson* v. *Taylor Mfg. Co.,* 67 Miss., 231.

There can be no question but that all the terms of the contract of sale between Mr. Lowenthal and Mrs. Keene are explicitly stated in the correspondence.

In the letter dated September 22, addressed to Mrs. Keene by Paxton, he says: "I have party to whom I can sell your property corner Grove and First North streets, this city, for $4,500 cash." The letter is dated Vicksburg, Mississippi. In the letter addressed to Mrs. Keene Mr. Paxton, dated Nov. 6, 1902, Mr. Paxton described the property as "Your Grove Street Property." In the other letter it is described as "the property," "the place," "your place."

We contend that the description in these letters are sufficient and we hold that there is no merit in the proposition that be-

cause Mr. Hall discontinued his efforts to purchase the property that the letter of September 22, is not to be considered.

That the description in the letter of September 22 is sufficient, we beg to refer the court to the following cases: *Handley* v. *Blackford,* 31 Ky., p. 1; 25 Am. Dec., 114; *Baldwin* v. *Kerlin,* 56 Ind., 426; *Cunyus* v. *Hooks Lumber Co.,* 48 S. W., 1106; *Quinn* v. *Champagne,* 37 N. W., 451; *Frances* v. *Barry,* 37 N. W., 353. There is a note to the last cited case, and we respectfully refer the court to the last paragraph of the note on page 358: *Hayward* v. *Wilmarth,* 78 N. Y. (Sup.), 347; *Phillips* v. *Swank,* 13 At. Rep., 712; *Falls of Neuce Mfg. Co.* v. *Hendricks,* 11 S. E., 568; *White* v. *Breen,* 32 L. R. A., 127.

CALHOON, J., delivered the opinion of the court.

This is a proceeding in chancery by Lowenthal for specific performance of an alleged contract of sale of real estate with Mrs. Keene. By amended bill Feld and his wife are made parties to a controversy whether Mrs. Keene shall be compelled to convey to Lowenthal or to Mrs. Feld. Lowenthal claims that there was a prior valid contract to convey to him. Feld asserts that there was no such binding contract, and that, if there was, it could not affect him or his wife, and that the conveyance should be to his wife. The question we decide is whether Lowenthal could compel specific performance if Feld had never appeared upon the scene. Mrs. Keene was an aged lady, resident in Virginia, but owned a house and half a square of land in the city of Vicksburg, Miss. This property was occupied at the commencement of these proceedings, and had been for ten years before, by Mr. Feld and his family as her tenants. The tenancy seems to have been quite satisfactory to Mrs. Keene, the rent being always promptly paid. Mr. Paxton was a real estate agent living in Vicksburg, where also Mr. Lowenthal resided. The first movement on the placid surface of the situation is a letter from Mr. Paxton to Mrs. Keene, of date September 22, 1902, saying that he could sell the property for $4,500 cash,

and asking prompt answer. She answered September 25th, declining, and saying her lowest cash price was $5,500. On September 30th he writes her in reply that "my client" had examined the residence, and found it "in very bad repair, and will cost at least $1,000 to fix up;" that $5,500 would be reasonable but for the necessity of repairs, but, considering this, he offers $4,700. On October 6th she answers, declining, and says she "could not possibly take less than $5,200 for the place," and "I would have to know who desires to purchase the place," and the amount of Paxton's commissions. This ends the correspondence on this branch of it, and it appears from the testimony that Paxton's letters had reference to a man named Hall. The matter then slept for a month, when Lowenthal came to Paxton, wanting to buy the property. Therefore, on November 6th Paxton wrote Mrs. Keene that he had "interested another party in the property," who offered $5,000 in cash for it; that he thought it a good price; and says (the italics being ours), "I advise that you take it, *as the property will soon be vacated,* Mr. Feld having bought the old Methodist parsonage on Grove street, *and anyone else renting the house,* will want it put in thorough repair before they move in, which will cost several hundred dollars;" and he puts his "fee" at $100 On November 15th Mrs. Keene answers this letter of the 6th saying (italics ours): "I am willing to take $5,000 cash for my place, *but I must know more about it, who it is that wishes to purchase the place, and when he will want to take possession,* as I will have to give notice to Mr. Feld. Also I have a *good deal of furniture that would have to be removed.* I am willing to give you $100 if you make the sale." On November the 18th Mr. Paxton replies, giving her the information that Meyer Lowenthal was the party making the offer; that he would *allow* 60 *days to remove the furniture;* would want nominal possession at once, but would allow Mr. Feld to occupy *"until he was ready to move* into the parsonage *which he has recently bought. To prevent his backing out,* I have required him to make a deposit of $25, which I

enclose herewith, same to be credited on purchase money *as soon as deed is signed.* Deed will be sent you *as soon as title is examined,* the $25 to be returned if the title is not good. You will of course have to *pay the taxes as they are now due."* The "deposit" referred to is a check by a bank at Vicksburg on a New York bank, for $25, payable to the order of Mrs. Keene, which was never cashed, and bears the date of the letter, November 18th. On that same day Paxton gave Lowenthal a receipt for the $25 "in part payment" of the purchase price, and reciting that "the balance of the purchase price, $4,975, to be paid after examination of title by attorney for Lowenthal and the delivery of a deed conveying a clear and unincumbered title by me to the said Lowenthal." This receipt is signed simply, "C. B. Paxton, Agt.," and could not bind Mrs. Keene, as it was not authorized by her, and she was not informed of its execution. This is conceded. But, aside from this, Mrs. Keene answered that letter of November 18th on November 22d, telling Paxton that she coud not sell to give possession until January 1st, and that she would "have to give Feld notice," and did not care to dispose of the property until the first of the year. Manifestly, Mrs. Keene was not bound by any contract up to that time. The next thing appearing is a letter from Paxton to Mrs. Keene of date November 25th, inclosing a deed to Lowenthal, which he asks her to sign, acknowledge, and send to a Vicksburg bank, with instructions to it to deliver to Lowenthal on the payment of $5,000, out of which the bank should pay a $1,000 mortgage and interest to Mrs. Gilland, and the $25 check, and Mr. Paxton's fee of $100. The letter then calls attention to a provision in the deed he incloses that she should have the rents to January 1st. It then states that "Mr. Lowenthal consents to your giving Feld notice." This does not appear in the deed, which is a warranty deed, to take effect at once, subject simply to Mrs. Keene's right to collect rents. From the date of that letter, November 25th, 1902, there is a profound silence until December 13th, when Paxton writes, asking Mrs. Keene as a special favor to him to

sign and return the deed, so he can get his commissions. She answers on December 17th that personal letter of Mr. Paxton about his fee, saying that as yet she had not heard the amount of her taxes; that Mr. Feld had written her that he had not bought the parsonage, and did not seem to care to make any change; and proceeds thus: "Mrs. Gilland has to be paid $1,000 and interest for six months and the taxes have also to be paid. Mr. Feld has to have thirty day's notice, unless Mr. Lowenthal wants to retain him as a tenant. As soon as I receive notice from the bank that the money is there waiting for me I will sign deed, and then you will get your money by the first of January." Unless Mrs. Keene is bound by this letter, it is plain that she is nowhere bound to Lowenthal. It was in answer to the letter of Paxton above referred to of December 13th, which it is well to set out in full. It is as follows: "I would ask as a special favor, which means nothing to you, that you sign and return the deed sent you on Nov. 25th. Christmas is approaching and I have a place where I can put my fee where it will add very much to the pleasure of several people. Awaiting a reply, I am," etc. We think the matter of these two letters has reference to a subject purely personal to Mr. Paxton. It has no concern with any agency of Paxton for either Lowenthal or Mrs. Keene, and Lowenthal can base no right whatever on these letters. Now, when Mrs. Keene wrote that letter of December 17th to Paxton in answer to his personal request, we next find a letter of date December 20th, from the bank to Mrs. Keene, informing her that the $5,000 were in the bank to be paid for the deed which had been forwarded to her for signature "some time since." This Mrs. Keene never answered. The next development is on December 24th, when Mrs. Keene writes Paxton: "You should not have written me that Mr. Feld had bought the Methodist parsonage, as of course thinking that I would lose my tenant made me agree to sell. Mr. Feld had been a tenant for so long, I did not care to compel him to give up the house. I have decided not to sign the deed, but will send

you the $100 so you will not be the loser. If this is satisfactory wire me at once and I will send you a money order." Undoubtedly, Mr. Paxton, not with any purpose or intent to do so, had so far misrepresented the facts as to induce her to think she would lose her tenant, whereas Feld bought the parsonage as an investment, and had no purpose to vacate his holding and occupy it. Mr. Paxton's answer of date December 27th expresses his satisfaction in her promise to send the $100, and explains that when he wrote the agreement to buy the parsonage was closed, though no deed had passed; that then, on question as to size of the lot, the trade was about to fail, when, afterwards, the trade was closed; and he again says, "You will certainly lose Mr. Feld as a tenant as soon as he can get into the parsonage." There is no answer to this letter. On January 5, 1903, he again writes her, saying the transfer of the parsonage was complete, and saying, "The minister moved out and the Felds were given possession on the first of January." On January 16th he again writes her, answering a letter of hers of January 8th, which has been lost, but agreed to be of no importance to the case, saying Feld had paid him the $100, that Lowenthal did not know of her sale to Feld, and was asking him every day or two if he had heard, and that he each time told him the deed had not been returned. On January 20th he writes her that he had returned the Lowenthal deed and $25 check, but they were refused to be accepted, and legal steps would be taken by Lowenthal. Before she got this, she wrote on the same day—January 20th—complaining that he had accepted the $100 "without making arrangements with Mr. Lowenthal about releasing me from the sale of the property." This reference to the matter as a "sale" is a mere opinion (if that) after the fact, and could not bind Mrs. Keene.

On the case stated the decree below is reversed, and decree here dismissing the original and amended bills, with costs of this court and the court below on appellee.

*Reversed.*

SUGGESTION OF ERROR.

*Brunini* v. *Hirsh,* for appellee, after the delivery of the foregoing opinion, filed a suggestion of error in this case, reviewing the correspondence between Mr. Paxton and Mrs. Keene. They say: "The court misconceived the facts in the case. The facts are Feld, on January 20th, 1903, when the original bill was filed, had only paid $100 on account of the purchase money, and has not paid the balance, and never has received a deed to the property. If these are the facts, neither he nor his wife are subsequent purchasers. 23 Am. & Eng. Enc. of Law, p. 572. Lowenthal filed his amended bill, and this was notice to Mr. and Mrs. Feld of the contract under which he claims. Feld and wife therefore had notice before they completed the sale by payment and conveyance, as they have not paid the balance or received a deed to this date. We shall now proceed to examine the other question in the case: 'Was there a binding contract between Mrs. Keene and Lowenthal?' We say there was." Counsel here enter into a lengthy discussion of the correspondence between Paxton and Mrs. Keene, contending that Mrs. Keene's letter of December 17, 1902, which is as follows: "Your letter of December 13th received. Would have answered sooner, but have been waiting to hear from Mr. Kelley in regard to my taxes. As yet have not heard from him the amount. Mr. Feld wrote me that he had not bought the Methodist parsonage, and did not seem to care to make any change. Mrs. Gilland has to be paid $1,000 and interest for six months, and the taxes have also to be paid. Mr. Feld is to have thirty day's notice, unless Mr. Lowenthal wants to retain him for a tenant. As soon as I receive notice from the bank that the money is there waiting for me, I will sign the deed, and then you will get your money by the first of January. Mr. Feld will owe me for December rent" —in reply to Paxton's letter to her December 13, 1902, creates a binding contract. They say further: "Mrs. Keene had not replied to Mr. Paxton's letter of November 25, 1902. Her letter of December 17th was also a reply to that letter. Does not the

language, 'Would have answered sooner, but have been waiting,' taken in connection with the facts that she had not made reply to the November 25th letter, that she had not returned the $25 check, and the other contents of the December 17th letter show beyond question that the reason why Mrs. Keene did not reply earlier to the November 25th letter was because she had not determined to sell or not to sell, because she was waiting to hear from Mr. Kelly in regard to her taxes before she would determine? The contents of the December 17th letter throws some light upon the construction to be placed upon this point. She answers, not the letter of December 13th, but the letter of November 25th. The fact is irresistible that the letter of December 17th was in reply to the November 25th letter in largest part, and to the December 13th letter in smallest part. If we are correct in this conclusion, the next step is the question as to whether or not the letter of December 17th, taken in connection with the previous correspondence, and with the fact that the $1,000 deposited by Lowenthal in the American National Bank as directed by Mrs. Keene, makes a complete contract. We deem it necessary to call the court's attention to that part of the decision about the misrepresentation of Mr. Paxton that Mrs. Keene would lose Feld as a tenant. Let us concede that the letter of December 17th completed the contract between Mrs. Keene and Lowenthal. What is there in Paxton's letters on this subject? We first find mention of it in a letter dated November 6th: 'This, I think, is a good price, and if you will allow me to I would advise that you take it, as the property will soon be vacant, Mr. Feld having bought the old Methodist parsonage on Grove street.' And in his letter of November 18th he says: 'Lowenthal will want nominal possession at once, but would allow Feld to stay until he was ready to move into the parsonage, which he has recently bought.' This is all Mr. Paxton ever wrote on the subject prior to the letter of December 17th. He writes subsequently to this letter about it, but it is with the view of satisfying Mrs. Keene that he had told the truth as far as he

understood. If it be true that the letter of December 17th completed the contract, then the representation made by Paxton at this date cannot affect it. We maintain that when Mrs. Keene wrote the letter of December 17th she was in possession of these facts from Feld himself. Feld did not buy the Mtehodist parsonage, and, moreover, did not care to make a change. This is shown by the letter itself."

CALHOON, J., delivered the opinion of the court in response to the suggestion of error.

We thank counsel for calling our attention to an inadvertence in the last clause in the original opinion in this case. That clause is this: "When the deed came for delivery to Feld on paying the balance of the purchase money, he did not pay until Paxton assured both him and his attorney that there was no written agreement to sell between Mrs. Keene and Lowenthal, or any one else." This might be misleading, inasmuch as the fact is that Feld never did pay the balance of the purchase money, being prevented by this suit, and all that he ever did pay was $100 to Paxton. Our opinion stands notwithstanding this. Really, the court decided the case on the sole question whether Lowenthal could compel specific performance, regardless of the transaction with Feld; and we decided in the negative, and adhere to that decision, and we shall modify the opinion so as to show this, and nothing more. In fact, the decree ordered in the opinion shows that that, and that only, was decided, and we need not have continued in the opinion to say anything whatever in reference to Mrs. Keene's transaction with Feld. We have examined with much care the suggestion of error, the argument in support of which is presented with great force, but fail to be convinced.

*Suggestion of error overruled.*