312 So.2d 709 (1975)
Robert N. STOCKETT et ux.
v.
EXXON CORPORATION.
No. 48056.
Supreme Court of Mississippi.
May 19, 1975.
Butler, Snow, O'Mara, Stevens & Cannada, Richard L. Forman, Roger C. Landrum, Jackson, for appellants.
*710 Heidelberg, Woodliff & Franks, Otis Johnson, Jr., Jackson, for appellee.
Before GILLESPIE, ROBERTSON and SUGG, JJ.
ROBERTSON, Justice.
Exxon Corporation, successor to Humble Oil and Refining Company, brought suit in the Circuit Court of the First Judicial District of Hinds County, Mississippi, against Robert N. Stockett and wife, Caroline Price Stockett, to recover $17,550, the total of rents paid under the terms of a lease to Humble entered into on June 27, 1968, together with interest at the legal rate from and after October 21, 1971.
After all the evidence was in, the court granted a peremptory instruction to the plaintiff for the recovery of $17,550, but denied the recovery of any interest. Defendants have appealed. They contend:
1. The court erred in finding that the third amendment to land purchase option was incorporated into the terms of the lease to company dated June 27, 1968, by virtue of paragraph 20 of the lease.
2. The court erred in granting a directed verdict and peremptory instruction for Exxon because the consideration recited in the third amendment was never paid to appellants.
3. Alternatively, the court erred in failing to find that the terms and provisions of the lease to Company dated June 27, 1968, even if "subject to" the third amendment to land purchase option, were reasonably susceptible to more than one construction thereby making the issue of the proper construction of the contract a matter for the jury to determine.
Plaintiff has cross-appealed. All errors assigned can be summed up in this one:
The court erred in refusing to allow appellee interest at the legal contract rate on the $17,550 judgment from and after October 21, 1971.
Humble (Exxon's predecessor) wanted to acquire a service station site, about an acre, on the south side of the proposed Pearl-Pascagoula connection or interchange with Interstate 55. After extended negotiations, on November 8, 1966, an option for lease was given by the Stocketts to Humble.
These were a few of the difficulties encountered:
1. The State of Mississippi claimed these lands and brought suit against the Stocketts to quiet title. The title question was finally resolved in the Stocketts' favor. See State v. Stockett, 249 So.2d 388 (Miss. 1971).
2. Platted but unopened streets extended into these swamp and overflow lands.
3. The survey crews at times had to use boats to go on this land to attempt to survey it.
4. As new facts were developed, it was necessary for the City of Jackson to change the location and the description of the right-of-way to be acquired.
With a commendable singleness of purpose, Humble and the Stocketts attempted to meet these difficulties head-on with other written instruments. The first amendment to the option for lease was executed on February 13, 1967; the second amendment on March 23, 1967; the third amendment on September 1, 1967; and the fourth amendment on June 6, 1968.
The third amendment, among other things, contained this paragraph:
"5. If after the lease called for in the `Option for Lease' dated November 8, 1966, as subsequently amended, is entered into by and between the parties hereto and prior to issuance of a building permit by the City of Jackson to Humble in accordance with Humble's plans and specifications, a governmental body or *711 other duly constituted authority imposes a `no access' restriction on the Southern right-of-way of the Pearl-Pascagoula Connection to Interstate Highway 55 Interchange so as to prevent Humble, its agents, customers, and patrons from having free and unrestricted ingress and egress for automobile traffic to and from the leased premises and the Pearl-Pascagoula Connection to Interstate Highway 55 Interchange, or in the event that at the time Humble commences construction on the leased premises the City of Jackson refuses to grant to Humble a building permit in accordance with the plans and specifications of Humble, then, and in either event, upon notice from Humble to optionors, optionors covenant and agree to refund and pay to Humble all sums of money received as rent under said lease. Upon the occurrence of either event, lessee shall have the right, at its option, to terminate the lease by giving written notice of its intention so to do to optionors and Humble shall thereupon be relieved from any liability under said lease." [Emphasis added].
The fourth amendment, among other things, provided:
"Said Option for Lease dated November 8, 1966, as previously amended, and as amended hereby, is ratified, approved and confirmed and the terms and provisions of said Option, as amended, survive the execution and delivery of the lease attached hereto as Exhibit "A"."
On June 27, 1968, a lease was entered into which contained this clause, specially typed into a printed form lease:
"(20) This lease and all rights of the parties hereto are subject to that certain Option for Lease dated November 8, 1966, as amended by instruments dated February 13, 1967, March 23, 1967, August 17, 1967, [September 1, 1967], and June 6, 1968, and further subject to any letter agreements between the parties hereto relating to said Option for Lease, as amended."
Paragraph 20 was personally initialed in ink by all parties.
On November 18, 1968, the Stocketts petitioned the City of Jackson for rights of access to their property. Their petition contained this paragraph:
"Petitioners would show that they have in existence at this time agreements between two major oil companies which will front on the new Pascagoula Extension. They would further show that in the event the rights of ingress and egress to this street are denied that they will lose the benefits of these agreements and will have to reimburse such companies for moneys thus far advanced. It is imperative that petitioners have the rights of ingress and egress to the aforesaid street in order that their property may be properly and profitably developed. The denial of these rights will practically destroy the value of their property which will abut the aforesaid street." [Emphasis added].
On July 3, 1969, the City of Jackson entered an order denying access to the Pearl-Pascagoula connection with I-55. On August 2, 1971, the City of Jackson refused to grant Humble a building permit on the land described in the lease of June 27, 1968. On September 21, 1971, Humble wrote the Stocketts canceling the lease under the provisions of paragraph 5 of the third amendment to land purchase option.
On July 10, 1972, the long and extended negotiations with the City of Jackson came to an end, and the Stocketts on that day executed a warranty deed to the City of Jackson conveying 29 1/2 acres (including the Humble service station site) to the City of Jackson for $300,000 cash.
Defendants contend that the trial court erred in construing and interpreting all of these instruments together as constituting the contract between the parties. They contend that the third amendment to the land purchase option should be isolated and separated from all of the other instruments *712 and construed by itself and, if so construed, the third amendment was without consideration because admittedly the $10 cash consideration recited therein was not paid.
This argument is without any merit. It is perfectly obvious to us, as it was to the trial judge, that it takes all of these instruments to make the mosaic of this most complicated matter. All are inextricably woven into the warp and woof of the cloth. It is impossible to remove a part without destroying the whole.
From Section 228(2), Restatement (Second) of Contracts, (Tent. Draft, 1973), we get this rule in aid of interpretation:
"A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."
The mutual advantages to Humble and the Stocketts are apparent if there could have been a successful culmination of all of these extended negotiations. Humble would have gotten a long-term lease of a valuable service station site, and the Stocketts would have been paid a handsome monthly rental for the term of the lease by Exxon, the largest corporation in the world.
The trial court was correct in peremptorily instructing the jury to find for the plaintiff. The judgment is affirmed on direct appeal.
In its cross-appeal, Exxon contends that the trial court erred in not allowing legal interest from October 21, 1971, to August 8, 1973. Cross-appellant is correct in its contention. The obligations of Exxon and the Stocketts were clearly matters of contract and not matters of forfeiture as interpreted by the trial judge. Mississippi has long held that the prevailing party in a breach of contract suit is entitled to have added legal interest on the sum recovered computed from the date of the breach of the contract to the date of the decree. Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59 (1945).
The undisputed testimony was that 6% interest per annum from October 21, 1971, to August 8, 1973, amounted to $1,893.69. We reverse and render on cross-appeal. Exxon is entitled to judgment in the total sum of $19,443.69 ($17,550 principal plus $1,893.69 interest). Of course, this judgment for $19,443.69 bears interest at the legal rate from August 8, 1973, to the date of payment.
Affirmed on direct appeal and reversed and rendered on cross-appeal.
RODGERS, P.J., and PATTERSON, INZER, SMITH, WALKER and BROOM, JJ., concur.