549 So.2d 1337 (1989)
Cassie OSBORNE, Jr.
v.
Willie BULLINS.
No. 07-58776.
Supreme Court of Mississippi.
October 4, 1989.
*1338 Solomon C. Osborne, Greenwood, for appellant.
Arnold F. Gwin, Greenwood, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal asks that we consider the form of the remedy available to the seller in a land sale contract where the buyer breaches. The court below granted a rather unorthodox remedy, a judgment for the seller in the amount of the purchase price, secured by a vendor's lien, all of which leaves buyer with the burden of marketing the property to a possible third party purchaser. We hold that the remedy fits the facts and was within the court's authority. We affirm.

II.
Willie Bullins owns Lot 1A in Rising Sun Addition Number 1, Greenwood, Mississippi, upon which sits a store building out of which Bullins has for years operated a business under the trade name "Bullins Food Mart." Bullins, who has but a seventh grade education, had been in business for himself for some twenty-seven years, the last seventeen at the location in issue. Bullins owes some $14,000.00 on an SBA loan secured by the property.
Cassie Osborne, Jr. lives in Baton Rouge, Louisiana. He holds a Ph.D. in political science and is a member of the faculty at Southern University. Osborne has relatives in Leflore County and has a variety of real estate interests there.
In the summer of 1986, Osborne approached Bullins and offered to purchase his property. "I guess he hard [sic] about I was wanting to sell, so he came to me," as Bullins put it. Osborne tendered a proposed contract which was on a form prepared by Osborne's brother, an attorney in Greenwood. Osborne had filled in the blanks to make the contract specific to Bullins' property.
On September 6, 1986, Bullins and Osborne formally entered into a contract of sale whereunder Bullins agreed to sell and Osborne agreed to buy the lot, its improvements and fixtures, subject to certain terms and conditions. The purchase price was $85,000.00. Of significance, the contract provided:
The sale is to be closed within 60 days from delivery of copy of proposed deed and certificate of title to Purchaser or as soon thereafter as insurable title can be effected, as hereinabove provided.
There is no question but that Bullins timely tendered adequate performance of his obligations under the contract.
The sixty days came and went and Osborne refused to close. Bullins brought suit in the Chancery Court of Leflore County, demanding specific performance. In defense, Osborne argues, inter alia, inability, saying that he has been unable to obtain *1339 financing. He says that he tried to borrow $125,000.00 to complete the purchase but was rebuffed. Specifically, Deposit Guaranty National Bank on December 29, 1986, declined Osborne's $125,000.00 loan application. A day later the Sunburst Bank refused a like loan. At trial Osborne had pending a loan application with Delta Foundation, Inc., but the record reflects no action thereon yea or nay. Of importance, there is no evidence Osborne tried to borrow $85,000.00 from anyone, except for a proposal that Bullins himself partially finance the purchase on terms less favorable than the contract, a proposal Bullins rejected.
The Chancery Court by final judgment filed August 19, 1987, held seller Bullins entitled to specific performance but then granted a remedy with a distinctly legal flavor, viz. a judgment against buyer Osborne in the sum of $85,000.00 with interest from date at the legal rate. The Court directed that Bullins execute a warranty deed conveying the premises to Osborne and deposit the deed with the clerk of the court to be released to Osborne once he paid the judgment. The Court further provided that if Osborne failed to pay the judgment, Bullins was entitled to the "rights and remedies of any other judgment creditor" and in addition was granted as vendor's lien on the property at issue.
Osborne appeals, challenging the Court's construction of the contract and the remedy granted.

III.
This is yet another case when the morning after a contracting party wishes he hadn't. See, e.g., Busching v. Griffin, 542 So.2d 860, 866 (Miss. 1989); Clinton Service Company v. Thornton, 233 Miss. 1, 11, 100 So.2d 863, 867 (1958). Osborne sees an escape hatch in a clause in the contract which reads as follows:
DEPOSIT: Purchaser has deposited with Seller $500.00 as earnest money. The same is to be applied to the cash down payment on closing of this transaction. If the title is not insurable as represented herein and cannot be cured or for any reason any party is incapable of performing this contract, the earnest money is to be returned to the purchaser.
If there were appended here "and the contract is thus void," Osborne's position would be significantly strengthened. Such language is nowhere to be found.
In contract construction cases our focus is upon the objective fact  the language of the contract. We are concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other. Here, nothing in the contract says that it will become unenforceable if "for any reason any party is incapable of performing," only that the earnest money is to be returned to the purchaser. Granted, the logic of providing for the return of earnest money on such an event and not declaring the contract unenforceable is a bit odd,[1] but if a party who contemplates purchasing a piece of property wishes to protect himself against the possibility that he may be unable to secure financing adequate to make the purchase, it is incumbent upon that party to so provide by clear language in the contract. Otherwise, this is a risk the buyer assumes when he executes the contract. This view is particularly appropriate where, as here, the contract of sale was a form supplied by Osborne.

IV.
Specific performance has traditionally been regarded a remedy for breach of contract that is not a matter of right but of sound judicial discretion. Carter v. Hurst, 234 So.2d 616, 620 (Miss. 1970); Roberts v. Spence, 209 So.2d 623, 625 (Miss. 1968); Tansil v. Horlock, 204 So.2d 457, 462 (Miss. 1967); Everett v. Hubbard, 199 Miss. 857, 864-65, 25 So.2d 768, 770 (1946). One consideration in the exercise of that *1340 discretion is the adequacy of damages to protect the expectation interest of the injured party. Roberts v. Spence, 209 So.2d 623, 625-26 (Miss. 1968). The traditional legal remedy, a judgment for the purchase price less what the seller with reasonable diligence could obtain from another buyer, is often attended by difficult measurement problems, the presence of which suggests an equitable remedy. Restatement (Second) Contracts § 360. Another important consideration is the level of transaction costs between the parties, and unless those costs are so high that no voluntary exchange can take place, the court should order specific performance.
Although courts continue to give lip service to the requirement of a demonstration of the inadequacy of the legal remedy  and our court is no exception, astute observers have long noticed that in practice specific performance has become widely available. See 5A Corbin, Contracts § 1142 at 125-26 (1951). Indeed, a substantial body of literature may be found arguing persuasively that specific performance ought generally be regarded as the preferred remedy. Ulen, The Efficiency of Specific Performance: Toward a Uniform Theory of Contract Remedies 83 Mich.L.Rev. 341 (1984); Schwartz, The Case for Specific Performance 89 Yale L.J. 271 (1979). Where a contracting party can feasibly be given what he bargained for, where is the justice in decreeing a substitute?
Most specific performance cases arising from breached land sale contracts are seller's breach cases. Still, the law well recognizes that the seller as well may have a specific performance remedy. See Tanner v. Hicks, 12 Miss. (4 Sm. & M.) 294, 299-300 (1845); Dollahite v. Orne, 10 Miss. (2 Sm. & M.) 590, 591-92 (1844); Deans v. Layton, 89 N.C. App. 358, 366 S.E.2d 560 (1988); Dobbs, The Law of Remedies § 12.13 (1973); Hunter, Modern Law of Contracts: Breach and Remedies ¶ 6.02[2] (1986); 71 Am.Jur.2d, Specific Performance §§ 112, 115 (1968).
Although labeled specific performance, the remedy granted below is more legal than equitable, taking these terms in their historical sense. Osborne has not been ordered to specifically perform anything. He has had a money judgment entered against him and, in our view, appropriately so. The traditional legal remedy would require Bullins to market the property to someone else and be limited to a judgment against Osborne to the difference, if any. Restatement (Second) Contracts § 347. The Chancery Court correctly perceived the unfairness and inadequacy of this notion and ordered the burden placed on Osborne. The remedy fashioned by the court below fits the facts of this case and, as well, the realities of the phenomenon of buyer's breach. See Trachtenburg v. Sibarco Stations, Inc., 477 Pa. 517, 384 A.2d 1209 (1978). Bullins contracted for liquidity in his assets, not just value, and the Court quite sensibly gave him what he bargained for. The Court was well within its authority in doing so.

V.
By cross-appeal, Bullins challenges the Chancery Court's denial of prejudgment interest. Judicial authority to award prejudgment interest to a prevailing party in a breach of contract suit has been recognized. Stockett v. Exxon, 312 So.2d 709, 712 (Miss. 1975); Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59 (1954). In the present action, Bullins retained full use and enjoyment of the premises up through the time of trial and for this reason the Chancery Court denied his request for prejudgment interest. On the facts, the Chancery Court was well within its authority.
ON DIRECT APPEAL, AFFIRMED; ON CROSS-APPEAL, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] In the ordinary contract, if the parties had contemplated that the contract would be void if the purchaser were unable to obtain financing, one would expect to find a provision that the $500.00 earnest money would be retained by the seller as liquidated damages. Such language is not in this contract.