IN THE SUPREME COURT OF MISSISSIPPI

NO. 2007-IA-02031-SCT

*DERR PLANTATION, INC.*

*v.*

*THOMAS L SWAREK AND THOMAS A. SWAREK*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/25/2007 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | ISSAQUENA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT R. BAILESS |
| | KENNETH B. RECTOR |
| ATTORNEYS FOR APPELLEES: | BRADLEY S. CLANTON |
| | WALKER (BILL) JONES |
| | BARRY W. FORD |
| | CHARLES WILLIS PICKERING |
| | ERIC WYNN HOSPODOR |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 08/06/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., RANDOLPH AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Thomas L. Swarek and Thomas A. Swarek (the Swareks) filed a complaint in the

Chancery Court of Issaquena County against Derr Plantation, Inc. (DPI), a Mississippi

corporation.  The complaint alleged that DPI had breached a contract to lease and sell to the

Swareks an operational farm including acreage, equipment, and livestock.  The Swareks

requested remedies including specific performance, a preliminary injunction, and

compensatory and punitive damages. After the chancellor denied both parties' summary judgment motions, the Swareks successfully petitioned the chancery court to transfer the case to circuit court.

¶2.     This Court granted DPI's petition for an interlocutory appeal of the transfer order. *See* Miss. R. App. P. 5. We find that because this case was within the jurisdiction of the chancery court, the chancery court erred by ordering its transfer to the circuit court. Therefore, we reverse the transfer order and remand this case to the Chancery Court of Issaquena County for further proceedings consistent with this opinion.

## FACTS

¶3.     In December 2004, Thomas L. Swarek entered into negotiations with DPI for the lease and purchase of an approximately 8,350-acre farm known as Derr Plantation, which lies in Issaquena and Sharkey Counties along the Mississippi River. The contemplated lease/purchase included real estate, equipment, and livestock. On March 1, 2005, the Swareks filed a complaint and a *lis pendens* notice in the Chancery Court of Issaquena County. In the complaint, the Swareks asserted that the parties had negotiated a contract providing for the Swareks' lease and purchase of Derr Plantation; the Swareks attached the contract documents to the complaint. These documents provided for a lease price of $750,000 payable over a two-year period and a sale price of 7.5 million dollars. The Swareks alleged that DPI had breached the contract after the Swareks refused to pay a higher price for the property, and that DPI's actions regarding the breach were willful, intentional, and fraudulent.

2

¶4.    The complaint stated that the Swareks were ready, willing, and able to perform the contract and were willing to close at the contract price "either now or later, and that "[i]t is difficult to measure the damages for refusing to sell the property to Plaintiffs, hence Plaintiffs are requesting specific performance of the contract of sale and are filing a lis pendens with this complaint."  The complaint included the following counts:

COUNT ONE – SPECIFIC PERFORMANCE

7. Because of the nature of the breach of the contract herein, Plaintiffs are entitled to an order of this court directing specific performance ordering the Defendants to carry out the terms of the contract documents Exhibit A, B, and C.

COUNT TWO – PRELIMINARY INJUNCTION

8. Because the failure to permit the Plaintiffs to take possession of the property under the lease within the next 30 days will cause them immediate damage for which there is no adequate remedy at law, they are entitled to a preliminary injunction granting them a lease of the property according to the terms specified in the contract documents.

COUNT THREE – DAMAGES

9. Even if the Defendants go ahead and deliver the property according to the contract, the Plaintiffs have been damaged in that the cost of any loan will now be at least 1% per annum higher than it would have been had there been no breach.  For breach of the agreement to lease, Plaintiffs are entitled to actual and consequential damages of not less than $500,000.00.  For breach of the agreement to convey the equipment and cattle, Plaintiffs are entitled to actual and consequential damages of not less than $175,000.00.  For breach of the agreement to sell the real estate, Plaintiffs are entitled to recover actual and consequential damages of not less than $1,000,000.00.  By reason of its willful, intentional, and gross breach of this contract, [Plaintiffs] are entitled to recover punitive damages of not less than $5,000,000.00 together with reasonable attorneys fees and costs.  Plaintiffs are entitled to pierce the corporate veil and are entitled to a judgment against the Defendants, jointly and severally.

3

The Swareks prayed for a preliminary injunction and for "specific performance according to the terms of the contract documents and/or award actual and consequential damages of $1,750,000.00 and punitive damages of $5,000,000.00 together with attorney's fees and costs . . . ."

¶5.     DPI filed an answer without contesting the jurisdiction of the trial court, and a counterclaim for reasonable attorney's fees and costs and for damages suffered as a result of the filing of the *lis pendens* notice. In the answer, DPI's primary contention was that there was no breach of contract because the parties had never formed a contract. Some discovery ensued and, more than one year after filing their complaint, the Swareks filed a motion for partial summary judgment on April 8, 2006, on the limited question of whether a valid contract existed under Mississippi law. DPI responded and filed its own competing motion for summary judgment, asserting that there was no contract. On December 4, 2006, the chancellor denied both parties' summary judgment motions, finding that there were genuine issues of material fact for trial. The Swareks petitioned this Court for an interlocutory appeal, which was denied.

¶6.     On June 1, 2007, two years and three months after the Swareks initiated the case in chancery court, and after suffering adverse rulings from the chancery court and this Court, they filed a motion to transfer the case to circuit court. At the motion hearing, the Swareks acknowledged their complaint's request for specific performance, but they contended that due to the passage of time, they now preferred the alternatively-pleaded remedy of compensatory and punitive damages. The Swareks argued that when they filed the complaint, their main issue for decision was enforcement of a contract, but once the

4

purported contract's validity came into question, the nature of the case changed to a legal claim for breach of contract. Invoking a right to a jury trial, the Swareks contended that the breach-of-contract issue appropriately should be tried by a jury in circuit court. DPI argued, inter alia, that the case should remain in chancery court because the Swareks' complaint for specific performance was within the jurisdiction of the chancery court and the Swareks' request for a transfer was belated.

¶7. The chancery court ruled that the complaint ultimately sounded in breach of contract, and that the chancery court lacked jurisdiction over breach-of-contract claims. The chancery court granted the motion to transfer, and it entered an order transferring the case to the Circuit Court of Issaquena County. This Court granted DPI's petition for an interlocutory appeal on the question of whether the chancery court erred in granting the Swarek's motion to transfer the case to circuit court.

## STANDARD OF REVIEW

¶8. "Jurisdiction is a question of law, which this Court reviews de novo." *Issaquena Warren Counties Land Co. v. Blakeney*, 996 So. 2d 747, 749 (Miss. 2008) (citing *Trustmark Nat'l Bank v. Johnson*, 865 So. 2d 1148, 1150 (Miss. 2004)). The grant of a motion to transfer from chancery court to circuit court, or vice-versa, is a jurisdictional question that is subject to de novo review. *Id.* (citing *RAS Family Partners v. Onnam Biloxi, LLC*, 968 So. 2d 926, 928 (Miss. 2007)).

## ANALYSIS

¶9. Under the Mississippi Constitution of 1890, circuit courts are courts of general jurisdiction, while chancery courts have limited jurisdiction over "all matters in equity" and

5

other designated matters. *See* Miss. Const. art. 6 § 156 (granting circuit courts "original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court"); Miss. Const. art. 6 § 159, § 160, § 161. The constitution contains complementary provisions for the transfer of cases commenced in the wrong forum. Miss. Const. art. 6 § 157 ("[a]ll causes that may be brought in the circuit court whereof the chancery court has exclusive jurisdiction shall be transferred to the chancery court"); Miss. Const. art. 6 § 162 ("[a]ll causes that may be brought in the chancery court whereof the circuit court has exclusive jurisdiction shall be transferred to the circuit court").

¶10. The jurisdiction of the chancery court is a question of subject matter jurisdiction that may be raised by either party at any time. ***Burnette v. Hartford Underwriters Ins. Co.***, 770 So. 2d 948, 951 (Miss. 2000). However, this Court is prohibited by the Mississippi Constitution from reversing on this issue after a final judgment. ***Id.*** (citing Miss. Const. art. 6 § 147). A party aggrieved by the trial court's grant or denial of a motion to transfer may seek relief by pursuing an interlocutory appeal, as DPI has done here. ***Id.***

¶11. "To determine whether a court has subject matter jurisdiction, we look to the face of the complaint, examining the nature of the controversy and the relief sought." ***RAS Family Partners***, 968 So. 2d at 928 (citing ***Durant v. Humphreys Mem'l Hosp./Extended Care Facility***, 587 So. 2d 244, 250 (Miss. 1991)). The reviewing court must look to the substance, not the form, of a claim to determine whether that claim is legal or equitable. ***Copiah County Med. Assocs. v. Miss. Baptist Health Sys.***, 898 So. 2d 656, 661 (Miss. 2005). We have consistently held that if it appears from the face of a well-pleaded complaint that an independent basis for equity jurisdiction exists, our chancery courts may hear and adjudge

6

law claims. ***RE/Max Real Estate Partners, Inc., v. Lindsley***, 840 So. 2d 709, 711-12 (Miss. 2003); ***Tillotson v. Anders***, 551 So. 2d 212, 213 (Miss. 1989) (citing ***Penrod Drilling Co. v. Bounds***, 433 So. 2d 916 (Miss. 1983); ***Burnett v. Bass***, 152 Miss. 517, 521, 120 So. 456 (1929)). In that circumstance, the legal claims lie within the pendent jurisdiction of the chancery court. ***Tillotson***, 551 So. 2d at 213. As long as the chancery court's equity jurisdiction has attached, the chancery court has discretion to award legal and punitive damages. ***RE/Max Real Estate Partners, Inc.***, 840 So. 2d at 712 (citing ***S. Leisure Homes v. Hardin***, 742 So. 2d 1088, 1090 (Miss. 1999)).

¶12.     Conversely, "if the complaint seeks legal relief, even in combination with equitable relief, the circuit court can have proper subject matter jurisdiction." ***RAS Family Partners***, 968 So. 2d at 928 (citing ***IP Timberlands Operating Co. v. Denmiss Corp.***, 726 So. 2d 96, 111 (Miss. 1998)). In fact, if there is some doubt as to whether a case is within the jurisdiction of the chancery court, the case is better tried in circuit court because "it is more appropriate for a circuit court to hear equity claims than it is for a chancery court to hear actions at law since circuit courts have general jurisdiction but chancery courts enjoy only limited jurisdiction." ***Burnette***, 770 So. 2d at 952 (quoting ***McDonald's Corp. v. Robinson Indus., Inc.***, 592 So. 2d 927, 934 (Miss. 1991)). This Court also has cited the constitutional right to a jury trial as a reason for resolving doubtful cases in favor of circuit court jurisdiction. ***Burnette***, 770 So. 2d at 952; ***S. Leisure Homes***, 742 So. 2d at 1090. Nonetheless, a party cannot, by invoking the right to a jury trial, secure a transfer to circuit court of a case properly within the chancery court's jurisdiction. *See **Issaquena Warren Counties Land Co., LLC***, 996 So. 2d at 751.

¶13.    The Swareks argue that the transfer to circuit court was appropriate because the substance of their complaint was breach of contract, a claim properly heard in circuit court. It is true that in several recent cases, this Court determined that the chancery court lacked jurisdiction over a breach-of-contract case, and that the circuit court had exclusive jurisdiction. *See Tyson Breeders, Inc. v. Harrison*, 940 So. 2d 230, 234 (Miss. 2006) (claim for breach of a contract for Tyson to provide Harrison with flocks of breeder hens); *ERA Franchise Sys., Inc.*, 931 So. 2d 1278, 1283-84 (Miss. 2006) (primary claims for various breaches of a contract governing the parties' business relationship); *Copiah Med. Assocs.*, 898 So. 2d at 661 (claims of breach of contract and for specific performance of a lease agreement); *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1182 (Miss. 2004) (various claims of fraud and bad faith breach of insurance contracts); *Burnette*, 770 So. 2d at 952 (claims of bad-faith breach of an insurance contract). Each of these cases involved a breach-of-contract claim for which damages, a legal remedy, was the appropriate remedy. *See Tyson Breeders*, 940 So. 2d at 234 (quoting *Roberts v. Spence*, 209 So. 2d 623, 626 (Miss. 1968) ("ordinarily a court of equity will not attempt to enforce a contract by specific performance where the parties have an adequate remedy at law to recover damages growing out of a party's failure to carry out a contract's terms").

¶14.    In *Tyson Breeders*, we were careful to distinguish cases involving a "unique matter such as real estate where specific performance is a particularly appropriate remedy." *Id.*; *see also Copiah Med. Assocs.*, 898 So. 2d at 660 (citing *Osborne v. Bullins*, 549 So. 2d 1337, 1340 (Miss. 1989) (recognizing specific performance as a traditional remedy for breach of a land-sale contract, especially for a seller's breach)). In *Copiah*, we determined that a lease

8

agreement for continued occupancy and use of the premises for a specific period of time for a specific purpose was not subject to the equitable remedy of specific performance, because that remedy would require periodic court supervision. *Id.* at 660-61 (citing *Sec. Builders, Inc. v. Sw. Drug Co.*, 244 Miss. 877, 885-86, 147 So. 2d 635, 639 (1962)). Because specific performance was not an available remedy for the breach, we held that the case was appropriately transferred from the chancery court to the circuit court. *Id.* at 661. We distinguished the case from *Osborne*, which had recognized specific performance as a remedy for a breach of a land-sale contract. *Id.* at 660 (citing *Osborne*, 549 So. 2d at 1340).

¶15. A claim for specific performance as a remedy for breach of contract is within the equity jurisdiction of the chancery court. *Lee v. Coahoma Opportunities, Inc.*, 485 So. 2d 293, 294-95 (Miss. 1986). The Swareks' complaint alleged that DPI had breached an agreement to lease and sell them a large farm, and they claimed that specific performance was the most appropriate remedy due to the unique nature of the real estate and accompanying livestock and farm equipment. Accordingly, they requested that the chancery court order DPI to perform the agreement by delivering the property according to the contract terms. They also requested a preliminary injunction entitling them to immediate possession of the property under the lease.

¶16. From our review of the nature of this controversy and the relief sought, it is apparent that the Swareks' primary claim is for specific performance as a remedy for breach of a real estate contract, an equitable claim. The requested injunctive relief also is within the chancery court's equity jurisdiction. *Issaquena Warren Counties Land Co.*, 996 So. 2d at 751. We are fully cognizant that the Swareks also prayed that the court award them compensatory

9

damages as an alternative to, or in addition to, specific performance. In a suit for specific performance, the court may order specific performance along with damages for the defendant's delay in performing the contract. *McVay v. Castenara*, 152 Miss. 106, 112, 119 So. 155, 156 (1928). Or, the court may, in its discretion, reject the plaintiff's claim that specific performance is the most appropriate remedy and instead award compensatory damages as the entire remedy for the breach. *Frierson v. Delta Outdoor, Inc.*, 794 So. 2d 220, 225 (Miss. 2001). In a suit for specific performance, the possibility that the chancery court will reject specific performance and instead award compensatory damages does not defeat that court's equity jurisdiction. This is because:

> It has long been settled in this state, as one of the pre-eminent principles of equity procedure, that the Chancery Court having taken jurisdiction on any one ground of equity, will thereupon proceed in the one suit to a complete adjudication and settlement of every one of all the several disputed questions materially involved in the entire transaction, awarding by a single comprehensive decree all appropriate remedies, legal as well as equitable, although all the other questions involved would otherwise be purely of legal cognizance; and in this state, the rule goes even to the extent that if the ground of equity fail under the proof, the cause may still be retained to a complete final decree on the remaining issues although the latter present legal subjects only and the decree would cover only legal rights and grant none but legal remedies, -- that having taken jurisdiction the power of the court to administer full relief is limited by nothing but justice itself.

*McClendon v. Miss. State Highway Comm'n*, 205 Miss. 71, 78, 38 So. 2d 325, 327 (1949) (citation omitted).

¶17. The Swareks argue that their claim for punitive damages for willful and intentional breach of contract implicated the jurisdiction of the circuit court. We have stated that the fact that punitive damages are sought is a "strong indicator" that the matter is legal, rather than equitable. *ERA Franchise Sys., Inc.*, 931 So. 2d at 1282 (citing *Crosby*, 870 So. 2d at

10

1179).  However, the Swarek's addition of a punitive-damages claim, which is an extraordinary remedy not favored in Mississippi law, *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006), does not outweigh their request for specific performance, which is recognized as a traditional and appropriate remedy for the wrong alleged. *Osborne*, 549 So. 2d at 1340.  Moreover, once the equity jurisdiction of the chancery court has attached, the chancery court has the power to award "legal and even punitive damages." *S. Leisure Homes*, 742 So. 2d at 1090.

¶18.  Having filed an action for specific performance within the chancery court's jurisdiction, the fact that the Swareks now express a preference for a legal remedy does not divest the chancery court of jurisdiction.  In *City of Starkville v. 4-County Electric Power Association*, 909 So. 2d 1094, 1101 (Miss. 2005), Starkville argued that the case should have been transferred from chancery court to circuit court because, since the time of its filing, the suit had "become basically a breach of contract suit wherein Starkville seeks to recover compensatory and punitive damages from 4-County for its failure to comply with the terms of the 1963 Agreement."  This Court rejected Starkville's argument.  *Id.* at 1102.  The Court looked to the prayer in the complaint which Starkville itself had filed in chancery court.  *Id.* at 1101.  The prayer requested relief that is parallel in many respects to that requested by the Swareks, including: (1) declaring the validity and enforceability of the contract; (2) specific performance of the contract; (3) a temporary and a permanent injunction; (4) actual and punitive damages, and (5) a prayer for general relief.  *Id.*  This Court found that the fundamental substance of Starkville's action was equitable.  *Id.* at 1102.  We stated:

11

When we review Starkville's complaint in today's case, we can state with confidence that the relief sought on specific performance of a contract is typically the type of relief to be considered by our chancellors sitting as a court of equity. Additionally, Starkville presumably made a knowing and conscious decision to commence this litigation in chancery court (as opposed to circuit court) when it filed its complaint in 1995. This case has been litigated in chancery court, appealed to this Court, and relitigated in chancery court. As we stated in *Rogers*[ *v. Eaves*, 812 So. 2d 208, 211-12 (Miss. 2002)], because the chancery court had already heard extensive litigation in the case, it was certainly in the best position to hear and resolve the relevant issues in the related case which had been commenced. In fact, in today's case, the same chancellor has been involved with the litigation of this case since its inception in 1995. Who was in a better position to fairly and correctly decide the issues in this case than the learned chancellor who had presided over all the proceedings in this case from the very beginning?

*Id.* (citations omitted). As in *City of Starkville*, the chancery court acquired jurisdiction over the Swareks' complaint because the fundamental nature of their claim was for the equitable remedy of specific performance; additionally, the chancellor has presided over the matter through discovery and dispositive motions and she is thus well-positioned to fairly and correctly decide the issues to be tried.

¶19. The Swareks' argument that their right to a jury trial would be infringed if this case remained in chancery court does not avail them.[1] The Mississippi Constitution provides that "[t]he right of trial by jury shall remain inviolate." Miss. Const. art. 3, § 31. "In 'chancery court, with some few statutory exceptions, the right to jury is purely within the discretion of the chancellor, and if one is empaneled, its findings are totally advisory.'" *Burnette*, 770 So. 2d at 952 (quoting *Louisville & Nashville R.R. v. Hasty*, 360 So. 2d 925, 927 (Miss. 1978)).

---

[1]Although the right to a jury trial usually is raised by a defendant who is unhappy with the plaintiff's chosen forum, the Swareks did not waive their ability to raise their right to a jury trial by filing the case in chancery court. *Burnette*, 770 So. 2d at 951-52.

However, no jury trial is required by section 31 for cases within the chancery court's jurisdiction. *Re/Max Real Estate Partners, Inc.*, 840 So. 2d at 713. Chancellors historically have had jurisdiction over claims for specific performance of a real estate contract. *McVay*, 152 Miss. at 112, 119 So. at 156. It may be expected that the chancery court, in adjudicating a request for specific performance, also will be called upon to adjudicate the validity, construction, definiteness or enforceability of the purported contract. *See Busching v. Griffin*, 542 So. 2d 860 (Miss. 1989); *Hutton v. Hutton*, 239 Miss. 217, 119 So. 2d 369 (1960); *Keene v. Lowenthal*, 83 Miss. 204, 35 So. 341 (1903). As we have discussed, the substance of the Swareks' complaint was for specific performance of a real estate contract. Because this case was within the chancery court's jurisdiction, the Swareks cannot secure a transfer to circuit court by requesting a jury trial.

## CONCLUSION

¶20. The primary thrust of the Swareks' complaint was a request for equitable relief in the form of specific performance of a real estate contract. Specific performance is a particularly appropriate remedy for breach of a real estate contract, and claims for specific performance are within the historic equity jurisdiction of the chancery court. Therefore, the chancery court had jurisdiction over this case, and it erred by granting the Swareks' motion to transfer the case to circuit court. We reverse the transfer order and remand this case to the chancery court for further proceedings consistent with this opinion. If the chancellor in her discretion determines that the Swareks are entitled to relief but specific performance is not warranted, she is empowered to order appropriate legal or equitable relief.

¶21. **REVERSED AND REMANDED.**

13

**WALLER, C.J., CARLSON, P.J., LAMAR, KITCHENS AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., CARLSON, P.J., LAMAR, CHANDLER AND PIERCE, JJ.; GRAVES, P.J., JOINS IN PART. DICKINSON, J., NOT PARTICIPATING.**

**RANDOLPH, JUSTICE, SPECIALLY CONCURRING:**

¶22. I agree with the Majority's jurisdictional analysis and conclusion that the chancery court erred in granting the Swareks' motion to transfer. I write separately to add that application of the doctrine of judicial estoppel and the underlying purposes of the Mississippi Rules of Civil Procedure[2] should preclude a litigant from "testing the waters" in one court, suffering adverse rulings, then deciding that their initial declaration regarding jurisdiction was erroneous, and seeking transfer to a different court or judge.

¶23. On March 1, 2005, the Swareks filed their Complaint in the Chancery Court of Issaquena County. According to Mississippi Rule of Civil Procedure 11(a), this signed pleading "constitutes a certificate that the attorney has read the pleading or motion; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." Miss. R. Civ. P. 11(a). On June 1, 2007, nearly two years and three months later, and following adverse rulings from the chancery court and this Court, the Swareks filed a motion to transfer the case to circuit court.

¶24. Without question, "[u]nder Rule 12(h)(3) a question of subject matter jurisdiction may be presented at any time, either by motion or answer. Further, it may be asserted as a motion for relief from a final judgment under MRCP 60(b)(4) or may be presented for the first time

---

[2]Namely, "to secure the just, speedy, and inexpensive determination of every action." Miss. R. Civ. P. 1.

14

on appeal." Miss. R. Civ. P. 12(h)(3) cmt. *See also **Burnette v. Hartford Underwriters Ins. Co.***, 770 So. 2d 948, 951 (Miss. 2000) ("Miss. R. Civ. P. 12(h)(3) allows either party to move the court for a transfer based on lack of subject-matter jurisdiction."). Nonetheless, under the doctrine of judicial estoppel, a party is precluded:

> ". . . from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation." ***Dockins v. Allred***, 849 So. 2d 151, 155 (Miss. 2003). "Because of judicial estoppel, a party cannot assume a position at one stage of a proceeding and then take a contrary stand later in the same litigation." ***Id***.

***In re Estate of Richardson***, 903 So. 2d 51, 56 (Miss. 2005). Accordingly, litigants should be cautioned against volitionally commencing a suit in one court, proceeding to the point of adverse rulings, and only then, when said position is deemed inconvenient or unprofitable, retreating therefrom, *see **Dockins***, 849 So. 2d at 155, and seeking a motion to transfer to another court and judge. By creating the appearance of forum- or judge-shopping, the litigant risks application of the doctrine of judicial estoppel.

**WALLER, C.J., CARLSON, P.J., LAMAR, CHANDLER AND PIERCE, JJ., JOIN THIS OPINION. GRAVES, P.J., JOINS THIS OPINION IN PART.**