# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-01494-SCT

*PARACELSUS HEALTH CARE CORPORATION*

*v.*

*CAROLYN WILLARD AND BETTIE SUE SUMNER*

### CONSOLIDATED WITH

### NO. 93-CA-00021-SCT

*BETTIE SUE SUMNER*

*v.*

*PARACELSUS HEALTH CARE CORPORATION,*

*PARACELSUS SENATOBIA COMMUNITY*

*HOSPITAL, INC., AND CAROLYN REVEL*

### CONSOLIDATED WITH

### 92-CA-01274-SCT

*BETTIE SUE SUMNER*

*v.*

*PARACELSUS HEALTH CARE CORPORATION,*

*PARACELSUS SENATOBIA COMMUNITY HOSPITAL,*

*INC., AND CAROLYN REVEL*

### CONSOLIDATED WITH

### 92-CA-00996-SCT

*CAROLYN WILLARD*

*v.*

*PARACELSUS HEALTH CARE CORPORATION,*

*PARACELSUS SENATOBIA COMMUNITY HOSPITAL,*

*INC., CAROLYN REVEL AND DANNY SWINDLE*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/30/97 |
| TRIAL JUDGE: | HON. GEORGE C. CARLSON, JR. |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE P. HEWES, III |
| | CYNTHIA L. ELDRIDGE |
| | META V. SWAIN |
| | GERALD W. CHATHAM, SR. |
| ATTORNEYS FOR APPELLEES: | NANCY ALLEN WEGENER |
| | MICHAEL T. LEWIS |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 11/4/1999 |
| MOTION FOR REHEARING FILED: | 11/18/99; denied 01/27/2000 |
| MANDATE ISSUED: | 2/3/2000 |

## BEFORE PRATHER, C.J., BANKS AND SMITH, JJ.

## BANKS, JUSTICE, FOR THE COURT:

¶1. In this appeal, this Court is faced with challenges to a punitive damages award based on retaliatory discharge and tortious breach of contract. We conclude that the award was justified and was not excessive under either traditionally common law standards or the federal constitutional statutes announced in ***BMW of North America, Inc. v. Gore***, 517 U.S. 559 (1996). Accordingly, we affirm.

### I.

¶2. Carolyn Willard and Bettie Sue Sumner, two former hospital employees of Senatobia Community Hospital ("SCH"), brought separate wrongful discharge claims against Paracelsus Healthcare Corporation ("Paracelsus"), SCH and its hospital officials. The juries in both cases found that Willard and Sumner had been terminated in violation of their oral contracts, awarding actual damages in the amount of $10,000 to Willard and $35,102 to Sumner. Willard and Sumner, consolidating their cases, subsequently appealed to this Court, citing error of the trial court in refusing jury instructions on retaliatory discharge and punitive damages based on retaliatory discharge and tortious breach of contract. ***Willard v. Paracelsus Health Care Corp.***, 681 So. 2d 539 (Miss. 1996) (***Willard I***).

¶3. This Court reversed and remanded the case to the Tate County Circuit Court for a new trial to allow the

jury to consider the submission of a punitive damages instruction based on retaliatory discharge as well tortious breach of contract. *Id.* at 543-44. Defendants Carolyn Revel and Senatobia Community Hospital were dismissed based on their financial inabilities to respond to a possible punitive damages award.

¶4. The facts as set out in the previous opinion of this Court in *Willard I*, 681 So. 2d at 540-42, delivered on September 12, 1996, accurately describe the events surrounding the terminations of Willard and Sumner, as presented to the jury in the punitive damages trial.

¶5. A punitive damages instruction was submitted to the jury on remand, along with jury instructions on retaliatory discharge and tortious breach of an oral contract. Submitted with these instructions were Special Interrogatories. Based on the evidence presented, the jury's response to the Special Interrogatories resulted in a punitive damages award of $1,500,000 each to Willard and Sumner. Aggrieved, Paracelsus appeals to this Court for relief.

## **II**.

¶6. Paracelsus argues that the trial court committed manifest error by limiting the second trial to only the issue of punitive damages. Also discussed in this subsection are sub-issues raised by Paracelsus that the trial court erred by failing to require the jury to award actual damages for retaliatory discharge before allowing the jury to consider punitive damages and that allowing a trial only on the issue of punitive damages violates the guarantee of Miss. Code Ann. § 11-1-65(1)(b)(Supp. 1999) that the same jury decide both punitive and actual damages.

### *a.*

¶7. Paracelsus asserts that in *Willard I*, the Court reversed the trial court's decision as to damages, making it necessary for a retrial on all damage awards. It contends that on remand, the trial court misapplied the holding of *Willard I* by failing to retry the compensatory damages award resulting from its breach of contract with Willard and Sumner.

¶8. Paracelsus is incorrect in its assertion that this Court reversed the compensatory damage awards in *Willard I*. Through jury verdicts, Willard and Sumner were awarded $10,000 and $35,102, respectively, in actual damages as a result of their discharges in violation of their contracts with SCH. *Willard I* at 541. Willard's award was based on constructive discharge and breach of oral contract, while Sumner's award was based on breach of oral contract. On direct appeal to this Court in consolidated cases, the issues presented as error included: failure of the trial court to give a retaliatory discharge instruction; whether punitive damages instructions based on retaliatory discharge and tortious breach of contract should have been given; and the denial of attorney's fees. *Id*. Finding error in the trial court's refusal to give the retaliatory discharge instruction and the punitive damages instructions, the Court reversed and remanded the matter to the trial court for a new trial on these issues.

¶9. Generally, under law of the case doctrine, the trial court on remand is bound by this Court's ruling on appeal. *Fortune v. Lee County Bd. of Supervisors*, 725 So. 2d 747, 751 (Miss. 1998). However, the awards were not considered by the Court in its previous opinion in *Willard I* because no error was alleged by Willard or Sumner in the awarding of actual damages. Paracelsus's argument on this point fails.

### *b*.

¶10. Paracelsus also asserts that under Miss. Code Ann. § 11-1-65 (1)(b)(Supp. 1999), the same jury assessing actual damages must be the jury that considers punitive damages. Paracelsus argues that the jury was not afforded any opportunity to award actual damages based on retaliatory discharge, but was instructed to immediately consider punitive damages if it found that Willard and Sumner had been subjected to retaliatory discharge.

¶11. Section 11-1-65(1)(b) states that:

> In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.

¶12. Paracelsus asserts that,

> [i]f, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing before the same trier of fact to determine whether punitive damages may be considered.

Miss. Code Ann. § 11-1-65(1)(c)(Supp. 1999).

¶13. As to the retaliatory discharge claim, the jury was not given an opportunity to award compensatory damages. The special interrogatories to the jury read as follows:

> 1. Was the plaintiff Carolyn Willard constructively discharged in retaliation for reporting forged checks?
>
> 2. When Paracelsus constructively discharged the Plaintiff Willard in breach of the employment contract as supplemented by the handbook, was the discharge the result of intentional wrong, malice, insult, abuse, reckless disregard, or gross negligence?
>
> 3. If you answer either of the above questions with a "yes" then you may award punitive damages in accordance with the court's other instructions. If you decide to award punitive damages enter the amount of the punitive damages award in the following blank.

¶14. The jury answered questions one and two affirmatively, awarding Willard $1,500,000. The second interrogatory submitted read identical to the one above, except question one read:

> Was the plaintiff Bettie Sue Sumner fired in retaliation for reporting the alleged forged checks?

The jury again answered the questions in the affirmative, awarding Sumner the same amount as Willard. In Jury Instruction 7 (P-8), the jury was instructed as follows:

> In considering the issued of punitive damages, you shall accept the following facts as proven. Defendant Carolyn Revel, at all times pertinent, was an employee of Paracelsus Healthcare Corporation and the administrator of the Senatobia Community Hospital.
>
> The Plaintiffs Carolyn Willard and Bettie Sue Sumner had an oral contract of employment supplemented by the Handbook with the Senatobia Community Hospital.

The Plaintiffs Carolyn Willard and Bettie Sue Sumner were discharged in violation of the oral contract supplemented by the Handbook.

The Plaintiffs have already been compensated for their actual damages in the amounts of $10,000 for Carolyn Willard and $35,102 for Bettie Sue Sumner.

¶15. The trial court essentially instructed the jury that compensatory damages had already been awarded in the prior trials. Upon review of the record, Paracelsus did not object to Instruction 7 (P-8), but requested that the last paragraph stating that compensatory damages had already been awarded remain in the instruction. Its position in the trial court was that Willard and Sumner had been compensated for their losses and could not be compensated twice for the same injury. Paracelsus now argues on appeal to this Court that the trial court failed to allow the jury to consider compensatory damages for the tortious breach of contract and retaliatory discharge claims.

¶16. This Court can only review matters on appeal as were considered by the lower court. *Ditto v. Hinds County*, 665 So. 2d 878, 879 (Miss. 1995). The assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal. *Ballenger v. State*, 667 So. 2d 1242, 1264 (Miss. 1995). Moreover, as shall be shown below, this is a contract action to which § 11-1-65 does not apply. Miss. Code Ann. § 11-1-65 (2)(a)(Supp. 1999).

¶17. Finally, the compensatory damages awarded in the prior trials were for the constructive discharge and breach of contract claims. That the motive for discharge was retaliation adds nothing to the compensatory damages, which arose out of the discharge itself. Actual damages based on retaliatory discharge and tortious breach of contract are the same as those awarded in the prior trials for breach of oral contract, such as lost wages. Thus, compensatory damages for these claims could have carried over into the second trial, making it unnecessary for the jury to reconsider actual damages as to these claims. Therefore, this argument fails.

*c.*

¶18. Paracelsus alleges it was error for the trial court to consider punitive damages based on either retaliatory discharge or tortious breach of contract because the facts developed in the second trial do not meet the threshold for punitive damages.

¶19. Paracelsus argues that Willard and Sumner have failed to show that its conduct was egregious enough to warrant an award of punitive damages and that the facts surrounding the discharge of Willard and Sumner do not support an award of punitive damages in this case. It further argues that this Court in *Willard I* did not mandate that a punitive damages instruction be given, but rather, that a retaliatory discharge instruction be submitted to the jury, with a suggestion that the trial court may consider a punitive damages instruction on both grounds.

¶20. In order for punitive damages to be awarded, the plaintiff must demonstrate a willful or malicious wrong or the gross, reckless disregard for the rights of others. *Valley Forge Ins. Co. v. Strickland*, 620 So. 2d 535, 540 (Miss. 1993). Punitive damages are only appropriate in the most egregious cases so as to discourage similar conduct and should only be awarded in cases where the actions are extreme. *Wirtz v. Switzer*, 586 So. 2d 775, 783 (Miss. 1991). The jury should be allowed to consider the issue of punitive damages if the trial judge determined under the totality of the circumstances and in light of defendant's

aggregate conduct, that a reasonable, hypothetical juror could have identified either malice or gross disregard to the rights of others. *Id*.

¶21. The basis of the action in this case is breach of the employment contract. Retaliatory discharge, found by this Court to be an independent tort in *Willard I*, is but another form of tortious breach of contract. Describing retaliatory discharge as an independent tort does not mean that the underlying cause of action is not one for breach of contract. Turning to sister jurisdictions for guidance, several courts have found that an action for retaliatory discharge is a contract action. *See **Phillips v. Butterball Farms Co.,*** 531 N.W.2d 144 (Mich. 1995); ***Mourad v. Automobile Club Ins. Ass'n***, 465 N.W.2d 395 (Mich. Ct. App. 1991). *Accord **Moffett v. Gene B. Glick Co.***, 604 F. Supp 229, 238 (N.D. Ind. 1984)(action for retaliatory discharge found to be breach of contract claim), *overruled on other grounds*, ***Reeder-Baker v. Lincoln Nat'l Corp***., 644 F. Supp 983, (N.D. Ind. 1986). This Court has held that in order to obtain punitive damages in breach of contract cases, the plaintiff must show that the breach resulted from an intentional wrong and that the defendant acted with malice or gross/reckless disregard for the rights of others. *American Funeral Assur. Co. v. Hubbs*, 700 So. 2d 283, 285 (Miss. 1997).

¶22. With regard to the retaliatory discharge, Paracelsus asserts that the record is devoid of evidence which would show malice or gross/reckless disregard in the discharge of either Willard or Sumner. It specifically argues that both appellees were terminated for valid reasons and that the jury should have been instructed that to find it liable on this claim, it had to find that a crime had been committed.

¶23. This Court has determined that there is an action based on a public policy exception to the employment at will doctrine when 1) an employee refuses to participate in an illegal act; or 2) an employee is discharged for reporting illegal acts of his employer to the employer or anyone else. ***McArn v. Allied Bruce-Terminix Co.,*** 626 So. 2d 603, 607 (Miss. 1993). Contrary to Paracelsus's argument, neither *McArn* or *Willard I* (finding punitive damages available for retaliatory discharge), suggest that the plaintiff must first prove that a crime was committed. Thus, this contention fails.

¶24. In *Willard I*, this Court concluded that:

> The public has a legitimate interest in seeing that people are not discharged for reporting illegal acts or not participating in illegal acts which may result in harm to the public interest. Anyone who terminates an employee for such reasons should be allowed a jury instruction on the issue of punitive damages in order to deter similar future conduct. Discharge in retaliation for an employee's good faith effort to protect the employer from wrongdoing constitutes an independent tort and may support punitive damages.

> However, a violation of the public policy exception to the employment at-will doctrine does not per se create a jury issue on the award of punitive damages. It will remain within the purview of the trial court to determine whether this issue should be submitted to the jury. The trial court must decide if "under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable hypothetical trier of fact could have found either malice or gross neglect/reckless disregard." ***Wirtz v. Switzer***, 586 So. 2d 775, 783 (Miss. 1991). On remand, the trial court may consider the submission of a punitive damages instruction based on the independent tort of retaliatory discharge.

681 So. 2d at 543.

¶25. While Paracelsus is correct in its assertion that this Court did not mandate that a punitive damages instruction on retaliatory discharge be given, the trial court did not err in allowing this instruction to be submitted. The record evidence clearly shows that a reasonable trier of fact could have found malice or gross disregard for the rights of Willard and Sumner. They both had impeccable work records and had received positive evaluations from Revel herself prior to the reporting of the incident involving the forged checks by Revel, which led to their firing. The jury was free to infer that Willard and Sumner were terminated for their actions of reporting Revel's wrongdoing. Therefore, this argument is without merit.

¶26. Paracelsus further asserts that the trial court erred in giving a punitive damage instruction based on tortious breach of contract. Paracelsus argues that its failure to follow the handbook in the termination of Willard and Sumner does not rise to the level of an independent tort.

¶27. As discussed *supra*, punitive damages are recoverable in breach of contract cases where the breach results from an intentional wrong and when there has been a showing of malice or gross/reckless disregard for the rights of others. *American Funeral Assur. Co. v. Hubb*, 700 So. 2d at 285. Paracelsus relies on *Southwest Miss. Reg'l Med. Ctr. v. Lawrence*, 684 So. 2d 1257 (Miss. 1996) for the proposition that failure to comply with an employee handbook is insufficient to support an award of punitive damages. However, the facts of the cases are distinguishable. *Southwest* dealt with a coverage issue regarding an employee benefit. On the facts of the case, the Court held that a punitive damages award was not supported. *Id.*

¶28. Here, in *Willard I*, this Court concluded that it was possible for the jury to have found that the breach of contract was an intentional wrong, and that a reasonable jury could have found that such an intentional wrong necessitated the imposition of punitive damages. *Willard I*, 681 So. 2d at 544. In light of this fact and considering the record in this case, the trial court did not err in submitting a punitive damages instruction based on tortious breach of contract. This contention is without merit as well.

## III.

### *a*.

¶29. Paracelsus asserts the punitive damages verdicts are excessive and against the overwhelming weight of the evidence. Paracelsus also claims the shocking size of the judgments clearly evidences passion and bias on the part of the jury.

¶30. In considering the assertion of an excessive punitive damage award, this Court is not authorized to disturb a jury verdict regarding punitive damages because it seems too low or too high. *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1106-07 (Miss. 1992). It will only be altered or amended when it is so excessive that it evinces passion, bias, and prejudice on the part of the jury so as to shock the conscience. *Id*. This Court has held that no hard and fast rule exits for establishing the maximum amount of punitive damages which can be awarded in any given case. *Dixie Ins. Co. v. Mooneyhan*, 684 So. 2d 574, 585 (Miss. 1996).

¶31. In its motion for new trial, Paracelsus raised the argument that the amount of the verdict was unconstitutional based on *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). The trial court denied its motion, finding that the verdict was supported by the weight of the evidence and was not excessive or influenced by passion or bias.

¶32. The Supreme Court found the punitive damages award in *BMW* to be excessive when considered in light of the reprehensibility of the defendant's conduct. *Id.* at 575-76. *BMW* also set forth guidelines which state courts should use when faced with challenges that the award is excessive and exceeds the constitutional limits, which include: 1) the degree of reprehensibility of the defendant's conduct; 2) the ratio between the plaintiff's compensatory damages and the amount of punitive damages; 3) the difference between the punitive damages and civil or criminal sanctions that could be imposed for comparable misconduct. *Id*.

¶33. The common law factors are essentially those set out in *Dixie Ins. Co. v. Mooneyhan*, 684 So. 2d 574, 585 (Miss. 1996) (amount of punitive damage award to be considered in light of: 1) whether amount serves to punish wrongdoer and as a deterrence from similar future conduct; 2) amount should serve as an example to deter others from similar offenses; 3) the amount should account for the pecuniary ability and net worth of defendant).

¶34. Considering this issue in light of the aforementioned factors, the amount awarded seems rationally related to the purpose of deterring Paracelsus or other employers from such conduct in the future. The prevention of terminations such as that of Willard and Sumner is necessary to promote and encourage employees like Willard and Sumner, who take an active interest in the well-being of the companies that employ them. The deterrence of conduct such as that by Paracelsus possesses employees with the ability to report misconduct about their employers or other employees without fear of repercussion. Paracelsus's action of terminating Willard and Sumner, both shown to be exemplary employees, for reporting the misconduct of Revel was in fact reprehensible, especially in light of the fact that Willard and Sumner were terminated despite favorable evaluations from Revel herself. Although there appears to be no record evidence that Paracelsus previously engaged in conduct like that presented in this case, Paracelsus was aware that Willard and Sumner were subsequently terminated after reporting Revel's actions to corporate officials. Despite the suspicions voiced by Willard and Sumner as to their firings, Paracelsus supported the terminations.

¶35. Paracelsus is also financially able to pay the punitive damages award. For the quarterly period ending March 31, 1997, Paracelsus had a net revenue of $168,490,000, with a net worth of $53,469,000. For the same period, Paracelsus's total assets equaled over $800,000,000. It is evident to the Court that Paracelsus' financial condition permits payment of the punitive damages amount, $3,000,000 combined, without imposing financial hardship to the company.

¶36. However, we must also consider the factors set out in *BMW*. Under these factors, the punitive damages awarded are not excessive. We first consider the degree of reprehensibility of Paracelsus's conduct. The *BMW* court noted that some wrongs are more blameworthy than others and that the damages imposed should reflect the enormity of the offense. *BMW* at 575. Sumner and Willard assert that because Paracelsus intentionally breached the employment contract, made false statements concerning the use of the employee handbook, fired appellees for reporting Revel's actions, and concealed or destroyed documentation which would show fraud by Revel, Paracelsus's conduct met the requirements of this factor.

¶37. There is no evidence that Paracelsus consistently engaged in the practice of firing its employees for reporting alleged illegal acts, and from all accounts, this was a one-time occurrence. The appellees, however, were terminated in violation of their contracts. There was testimony that back-up copies of the vouchers and checks, which appellees argue was proof of the forged checks, could not be found although

there is testimony that it did exist. There was also testimony that much of the back-up documentation had been housed at a storage facility, which was later burglarized. Paracelsus offered this as reason why some documentation related the forged checks was missing. The jury was entitled to infer from the evidence presented whether there was any concealment of documentation by Paracelsus.

¶38. We next consider the ratio between the compensatory damages and the amount of punitive damages. Here, Willard's award was 150 times actual damages while Sumner was awarded over 43 times the amount of actuals. In *BMW*, the Court reasoned that the constitutional line is not marked by a simple mathematical formula. *BMW*, 517 U.S. at 582. The Court there found that a punitive damages award 500 times the amount of actual damages was clearly outside the acceptable range. *Id* at 560. The Court, however, asserted that a higher ratio is justified in cases where the injury is hard to detect or the monetary value of non-economic harm might have been difficult to determine. In this case, there were no non-economic damages that were difficult to determine, and there was no injury which was hard to detect. The harm inflicted to Willard and Sumner was purely economic in nature, and both women were easily able to obtain other employment. Although high, we note that the ratio here is far less than that found to be excessive in *BMW*.

¶39. As to the last factor comparing the punitive damage award with possible civil or criminal sanctions, we conclude that there are no other sanctions which would be imposed under the facts of this case.

¶40. Based on the foregoing analysis, this Court concludes that the award of punitive damages in this case was not constitutionally excessive.

<b>b</b>.

¶41. Paracelsus further argues that prejudicial comments by appellees' counsel biased the jury. It also alleges that the manner in which appellees' expert witness was paid likely influenced his testimony, increasing the jury's prejudice against Paracelsus.

¶42. Paracelsus first points to a statement by counsel for appellees during closing argument regarding the sale of SCH. While Paracelsus asserts that the parties agreed in chambers that the jury would not be advised of any attempts to sell SCH, this Court finds no evidence of such in the record. Moreover, the trial court sustained Paracelsus's objection to the statement, instructing the jury to disregard the statement.

¶43. Paracelsus also contends that counsel for appellees made a statement suggesting that it had sent no representatives to attend the trial. During closing argument, counsel for appellees made reference to his observation that no one was present at the trial from the corporate offices of Paracelsus. Specifically, he stated that "There's not even anybody in this courtroom from that company. This gentleman, Mr. Tesar, is with a corporation that's not even in the lawsuit. We've let them out." Mr. Tesar was the current administrator for SCH. In response to Paracelsus's objection, the appellees' attorney did retract this statement and clarified for the jury that he was trying to say no one was present from the corporate headquarters of the company.

¶44. Paracelsus goes on to argue that because appellees' expert witness was paid pursuant to a contingency fee, his testimony was influenced. Paracelsus cites Rule 3.4(b) of the Mississippi Rules of Professional Conduct, which prohibits an attorney from "offering an inducement to a witness that is prohibited by law." The comment to Rule 3.4(b) provides that while it is improper to pay an expert witness

a contingent fee, it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. ***Id***.

¶45. Bruce Charles, appellees' expert on corporate finance, had never testified as an expert before and had no set rate of compensation for testifying. On cross examination, Charles denied that he was being paid on a contingency fee and that he was informed by appellees that he would be reimbursed for expenses such as travel and long distance charges and that he would be fairly compensated for time away from his business and family. We find nothing in the record to suggest that Charles's fee was contingent as Paracelsus argues.

¶46. In light of the foregoing, we conclude that Paracelsus's contention of bias and prejudice is without merit.

## IV.

¶47. Paracelsus asserts that Jury Instruction 11 improperly stated the burden of proof necessary in order to recover punitive damages for the tort of retaliatory discharge as proof by a preponderance of the evidence.

¶48. Paracelsus contends that a plaintiff asserting a tort claim must prove the claim by clear and convincing evidence, while the burden in contract claims is preponderance of the evidence. Paracelsus also argues that the trial court erred in denying proposed Jury Instruction D-11(a), which it claims states the burden of proof necessary for tortious breach of contract.

¶49. Instruction 11 reads as follows:

> If you find from a preponderance of the evidence that Defendant discharged Plaintiffs Carolyn Willard and Bettie Sue Sumner in retaliation of their refusal to participate in an illegal act or for their reporting an illegal act when they reported the alleged forged checks, then you shall find for the Plaintiffs Carolyn Willard and Bettie Sue Sumner on the issue of retaliatory discharge.

> A malicious act is a wrongful act intentionally done without legal justification or excuse. A wanton act is an act done in reckless disregard of the rights of others.

> If you further find that the retaliatory discharge was done intentionally, maliciously or with gross negligence or reckless disregard, then you may award punitive damages to Plaintiffs Carolyn Willard and Bettie Sue Sumner.

Proposed Instruction D-11 read:

> If you find that Defendant Paracelsus Health Care Corporation tortiously breached its contract with Carolyn Willard and/or Bettie Sue Sumner that the Plaintiffs suffered damage, you may then consider whether to award punitive or exemplary damages against the Defendant for the sake of example and by way of punishment. You may, in your discretion, award such damages if, but only if, you find by clear and convincing evidence that the Defendants were guilty of oppression or malice in the conduct on which you base your findings of liability.

> "Malice" means conduct which is intended by the Defendant to cause injury to the Plaintiff, or is carried on by the Defendant with conscious disregard of Plaintiff's rights.

> The law provides no fixed standard for the amount of punitive damages, but leaves the amount to the

jury's sound discretion, exercised without passion or prejudice.

In arriving at any award of punitive damages you are to consider the following:

1. The reprehensibility of the Defendant's conduct;

2. The amount of punitive damages which will have a deterrent effect on the Defendants, in light of the Defendants' financial condition; and

3. That any punitive damages awarded must bear a reasonable relation to actual damages.

¶50. Miss. Code Ann. § 11-1-65(1)(a)(Supp. 1999), effective from and after July 1, 1993, states in pertinent part that:

In any action in which punitive damages are sought...punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, or committed actual fraud. . . .

¶51. Section 11-1-65(2)(a) states that the provisions of this section shall not apply to contracts. The issue of punitive damages in suits for tortious breach of contract is instead governed by common law. *American Funeral Assur. Co. v. Hubbs*, 700 So. 2d 286. Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort. *Id.* at 286 (quoting *Blue Cross & Blue Shield of Miss., Inc. v. Maas*, 516 So. 2d 495, 496-97 (Miss. 1987)). Before punitive damages can be recovered, the plaintiff must prove by a preponderance of the evidence that the defendant acted with (1) malice or (2) gross negligence or reckless disregard for the rights of others. *Id*.

¶52. On appeal, this Court does not review jury instructions in isolation; rather they are read as a whole to determine if the jury was properly instructed. *Lovett v. Bradford*, 676 So. 2d 893, 896 (Miss. 1996) (quoting *Peoples Bank & Trust Co. v. Cermack*, 658 So. 2d 1352, 1356 (Miss. 1995). Accordingly, defects in instructions do not require reversal where all instructions taken as a whole fairly-although not perfectly-announce the applicable primary rules of law. *Id*. at 897. However, if those instructions do not fairly or adequately instruct the jury, this Court can and will reverse. *Id*.

¶53. This Court in *Willard I* recognized that retaliatory discharge is an independent tort. *Willard I* at 543. However, this description does not sever the underlying cause of action as one for breach of contract. It is well-settled that punitive damage awards arising out of breach of contract require proof of an independent tort. *Blue Cross v. Blue Shield of Miss., Inc. v. Maas*, 516 So. 2d at 496-97. On this premise, it is suggested that the standard of proof necessary to recover punitive damages based on retaliatory discharge is proof by a preponderance of the evidence, which is the common law standard for contract breaches involving an intentional wrong. *See Hurst v. Southwest Miss. Legal Servs. Corp*., 708 So. 2d 1347, 1350 (Miss. 1998); *American Funeral Assur. Co. v. Hubbs,* 700 So. 2d at 285-86.

¶54. The jury in this case was properly instructed on the burden of proof necessary for punitive damages to be awarded based on retaliatory discharge. Instruction 11 correctly stated that the jury must find by a preponderance of the evidence for Willard and Sumner on the issue of retaliatory discharge in order for

punitive damages to be awarded.

¶55. We conclude that the trial court did not err in refusing to give Instruction D-11. As worded, it appears to state that the burden which must be met to recover punitive damages for tortious breach of contract is clear and convincing evidence, which is an incorrect statement of law. This assignment is, thus, without merit.

## V.

¶56. Paracelsus contends that the interrogatories, as submitted, led the jury to conclude that it must assess some amount of punitive damages.

¶57. The Special Interrogatories submitted to the jury read as follows:

1. Was the plaintiff Carolyn Willard constructively discharged in retaliation for reporting the forged checks?

_____yes _____ no

2. When Paracelsus constructively discharged the Plaintiff Willard in breach of the employment contract as supplemented by the handbook, was the discharge the result of intentional wrong, malice, insult, abuse, reckless disregard, or gross negligence?

_____yes _____no

3. If you answer either of the above questions with a "yes" then you may award punitive damages in accordance with the court's other instructions. If you decide to award punitive damages, enter the amount of the punitive damages award in the following blank:

_____

4. If you decide that punitive damages are not appropriate in this case, then you should write "NONE" in the following blank.

_____

¶58. The interrogatory read the same as it related to Sumner, except for paragraph one, which required the jury to answer whether Sumner had been fired in retaliation for reporting the alleged forged checks. The jury answered yes to questions one and two on each form, awarding both Willard and Sumner $1,500,000 each in punitive damages.

¶59. At trial, Paracelsus objected to the special interrogatories on grounds which differ from those now presented on appeal to this Court. While its argument on appeal is that the form of the interrogatories led the jury to believe it must award punitive damages, its basis for objection at the trial court centered on the insertion of the words alleged and malice in appropriate places within the interrogatories. This Court has held that a defendant is procedurally barred from raising an objection on appeal that is different from that raised at trial. ***Jones v. State***, 606 So. 2d 1051, 1058 (Miss. 1992). This assignment fails.

## VI.

¶60. For the foregoing reasons, the judgment of the trial court is affirmed.

¶61. **AFFIRMED.**

> **PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE AND SMITH, JJ., CONCUR. WALLER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY COBB, J. MILLS, J., NOT PARTICIPATING.**
>
> **WALLER, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶62. I agree with the majority in all respects save the amount of punitive damages awarded, which I find to be arbitrary and unreasonable. Therefore, I respectfully concur in part and dissent in part.

¶63. In ***Bankers Life & Cas. Co. v. Crenshaw***, 483 So. 2d 254, 278 (Miss. 1985), *aff'd on other grounds,* 486 U.S. 71, 108 S. Ct. 1645, 100 L. Ed. 2d 62 (1988), we set out general factors to be considered in awarding punitive damages, including the amount necessary to punish the defendant for wrongdoing and to deter the defendant from similar conduct in the future; and the amount necessary to deter others from committing similar conduct. We expanded our factors to include consideration of such amount as is necessary to reward the plaintiff for public service in bringing the wrongdoer to accountability. *See **Mutual Life Ins. Co. v. Estate of Wesson***, 517 So. 2d 521, 532 (Miss. 1987).

¶64. Focusing on the reprehensibility of the defendant's conduct, the United States Supreme Court, in ***BMW of N. Am., Inc. v. Gore**, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 589 (1996)*, found an award of punitive damages to be grossly excessive. The Court noted, "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW*, 517 U.S. at 575. I do not believe Paracelsus' conduct to be so egregious as to warrant a punitive damages award of $1.5 million for each plaintiff. Even though Paracelsus wrongfully terminated Willard and Sumner for reporting illegal acts, there is an absence of proof of any aggravating factors associated with that conduct. Paracelsus' conduct evinced no reckless disregard for the health and safety of Willard and Sumner. The harm suffered by them was purely economic in nature; both were easily able to obtain other employment; and both were adequately compensated by the jury for their actual losses. Additionally, there is no evidence of Paracelsus repeatedly engaging in the same conduct. While I do not suggest a categorical approach in determining an acceptable punitive damages award, I am convinced that the amount awarded below is unnecessary to meet the goals of punishment, deterrence, and adequately rewarding the plaintiffs for bringing the action.

¶65. When an award of punitive damages is excessive, a remittitur is appropriate. Miss. Code Ann. § 11-1-55 (1991). Therefore, I would order a remittitur of $750,000 on the punitive damages award of each plaintiff. Either Willard or Sumner could accept or decline a remittitur without affecting the other's right to a new trial. If Willard and Sumner accept the remittitur reducing the punitive damages award to $750,000 for each of them, the judgment of this Court would become final within ten days and the trial court's judgment, as reduced by the remittitur, would be affirmed. If both decline the remittitur, the judgment below would be reversed in part to the extent that it awards punitive damages, and this case would be remanded to the lower court for a new trial on punitive damages alone. Of course, one may accept the remittitur, and the

judgment would become final as to her, and one may decline the remittitur and be granted a new trial on punitive damages.

¶66. I, therefore, respectfully concur in part and dissent in part.

**COBB, J., JOINS THIS OPINION.**