# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-00197-SCT

*ROY BRADFIELD*

*v.*

*RICHARD SCHWARTZ d/b/a SCHWARTZ & ASSOCIATES, P. A., AND RICHARD SCHWARTZ, INDIVIDUALLY*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 12/23/2004 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES ASHLEY OGDEN |
| | MICHAEL B. McMAHAN |
| ATTORNEY FOR APPELLEES: | J. WYATT HAZARD |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 08/24/2006 |
| MOTION FOR REHEARING FILED: | 06/15/2006 |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.

¶2.     This case comes before us on appeal from a final judgment entered by the Circuit Court for the First Judicial District of Hinds County. The jury returned a verdict in favor of the plaintiff and against Schwartz & Associates, P.A. in the sum of $8,750; however, the jury

returned a verdict against the plaintiff on all issues as to Richard Schwartz, individually. In entering final judgment in this case, Judge Winston L. Kidd specifically determined the jury verdict was consistent with the evidence presented at trial and that the plaintiff's motion for punitive damages was not well taken and should be denied. Aggrieved by the circuit court's failure to submit the issue of punitive damages to the jury, the plaintiff now appeals. Finding that the circuit court erred in failing to comply with the statutory requirement to conduct an evidentiary hearing on punitive damages, we reverse and remand this case to the trial court to conduct an evidentiary hearing in order to determine whether the issue of punitive damages should be considered by the jury.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3. On July 16, 1999, Roy Bradfield was traveling northbound on Interstate-55 when his truck was rear ended by a tractor-trailer owned by Parker Brothers Trucking. Upon impact, Bradfield and his passenger, Kenny Butler, were ejected from Bradfield's truck. As a result of the accident, Bradfield suffered severe injuries, and Butler was killed.

¶4. Calvin Burwell, who was also traveling northbound on I-55, witnessed the accident and was one of the first to arrive on the scene. After pulling his truck to the side of the road, Burwell discovered Bradfield lying unconscious near the center line of I-55 and went to his aid. When Bradfield regained consciousness, he discovered Burwell at his side, and the two conversed. During their brief conversation Burwell assured Bradfield that he would help him find an attorney. Once emergency units arrived on the scene about thirty minutes after the accident, Burwell left and continued on his way to Lexington, Mississippi, where he had a

2

scheduled appointment.

¶5.    According to Burwell, after the accident, he telephoned the University Medical Center to check on Bradfield's condition.  It was during this brief phone conversation with Bradfield that Burwell first suggested that Bradfield retain Richard Schwartz as his legal counsel. Burwell maintains that immediately after his phone conversation with Bradfield, he telephoned Schwartz & Associates to inform the law firm that he had recommended that Bradfield retain the firm for legal representation in connection with the injuries Bradfield suffered in his accident.    Burwell testified that his call to Richard Schwartz's office was returned by one of Schwartz's associates, David Galyon.    Burwell further testified that the Sunday afternoon following the accident Galyon telephoned him, picked him up at his house, and the two of them drove to UMC where they proceeded to "sign Bradfield up" by way of a contract for legal representation.

¶6.    According to Burwell, shortly after visiting Bradfield at the hospital, he (Burwell) went to Richard Schwartz's office where he met with both Galyon and Schwartz and negotiated an alleged agreement whereby Burwell would be compensated by Schwartz & Associates as an investigator on Bradfield's case at the rate of twenty dollars per hour.    Burwell's testimony reveals that this fee was to be paid in lieu of a "finder's fee."   Burwell claims the majority of his billable hours while under the employ of Schwartz was spent in an effort to procure the case of Bradfield's passenger, Kenny Butler, through Butler's heirs.

¶7.    In contrast to Burwell's testimony, Richard Schwartz testified that he first met Burwell two to three weeks prior to the accident when Burwell came to his office seeking employment.

3

Schwartz maintained that he informed Burwell that while his firm had no need for his services at that time, he would consider him in the future. Schwartz asserted that Burwell's employment with Schwartz & Associates came about following Bradfield's accident after Burwell telephoned Schwartz's office to inform the firm that he had recommended the firm to Bradfield for legal representation. Moreover, it was only after he determined that Burwell had been on the scene immediately after the accident, and would be a logical and advantageous choice for the case, that Schwartz agreed to hire Burwell as an investigator and compensate him at a rate of $20.00 per hour.[1] Interestingly, Schwartz hired Burwell without requiring any references and without having knowledge as to whether Burwell had any investigative experience. Moreover, Schwartz agreed that Bradfield's case was the kind of case for Burwell to "bite his teeth in."[2] Schwartz claimed that, at the time, hiring Burwell was the best decision he could make for his client and that based on his compilation of investigation notes, witness statements and other information, Burwell's work appeared to be reasonable. According to Schwartz, on August 13, 1999, because liability against Parker Trucking had been established, he instructed his firm's accounting department to cease paying Burwell's investigation invoices as further investigation had become unnecessary. According to Schwartz's files, the only documented investigative work product generated by Burwell in this case were pictures taken

---

[1]Schwartz claimed that he normally paid his investigators $40.00 per hour, but due to Burwell's lack of investigative experience, Schwartz reduced Burwell's rate of compensation to $20.00 per hour.

[2]It is indisputable that if Schwartz were forced to litigate this case, Burwell, as an eyewitness to the accident, would be an important witness at trial. It is thus at least questionable as to whether Burwell should have been on Schwartz's payroll.

of the automobiles involved in the wreck.[3]

¶8.     Following the accident, Bradfield's case was assigned to Mike Davis, a claims manager at Schwartz & Associates.[4]   According to Davis's testimony, he supervised the Bradfield case and became privy to Burwell's "phantom function" at the firm.   Davis claimed he questioned Schwartz about Burwell's investigative work and ultimately began tracking Burwell's expenses. He testified further that a substantial portion of Burwell's investigative expenses, which should have been allocated to the firm based on time spent in trying to obtain the Kenny Butler case, found its way onto Bradfield's billing statement and that Bradfield was billed accordingly. Davis asserts that Schwartz forced him to improperly bill Bradfield.

¶9.     On May 10, 2000, Schwartz & Associates settled Bradfield's case with Parker Brothers Trucking's insurer for $131,250.   Upon receipt of the settlement check, Davis approved all legal fees and expense deductions and, on May 14, 2000, disbursed a check in the amount of $63,340.15 to Bradfield.   The total of the Burwell investigative expenses deducted from the settlement in the Bradfield case was in the amount of $3,753.73.

¶10.     Schwartz claims that the Burwell expenses were inadvertently placed on Bradfield's bill and that this clerical error occurred without his knowledge.   Schwartz further asserts that he first became aware there were problems with the Bradfield settlement upon receipt of the

---

[3]This is totally inconsistent with Schwartz's testimony that Burwell had compiled investigative notes, witness statements and other information.

[4]Mike Davis has a multi-million dollar lawsuit pending against Schwartz.   In that suit, Davis is represented by Bradfield's counsel.   It follows that all of Davis's testimony was understandably contested at trial.

summons and complaint in the instant litigation. Moreover, Schwartz states that after reviewing Burwell's billing and trying to distinguish exactly which invoices related to what case - Butler or Bradfield - he met with Burwell in an effort to resolve the matter.[5] After several failed attempts to follow up with Burwell, Schwartz issued a check to Bradfield for the estimated amount of all charges exacted by Burwell - $4,500 plus interest. The check was tendered to Bradfield without any requirement that Bradfield release Schwartz and his firm from any further liability based on the billing discrepancy.

¶11. On February 1, 2001, Bradfield commenced suit against both Richard Schwartz and his law firm, Schwartz & Associates, P.A., claiming that Burwell's investigation expenses were fraudulently and improperly deducted from his settlement. Specifically, Bradfield claimed the expenses were not for investigation, but rather were a "finder's fee" which Schwartz had intentionally passed on to him. In so claiming, Bradfield charged Schwartz with breach of contract, breach of a covenant of good faith and fair dealing, intentional acts of fraud and conspiracy to defraud. Bradfield further claimed that Schwartz's actions caused him to suffer

---

[5]Schwartz admitted that Burwell worked on Butler's case; however, Schwartz testified that Burwell informed him that Butler had an heir who lived in Lansing, Michigan. According to Schwartz, by the time he received this information from Burwell concerning a potential heir in Michigan, he (Schwartz) had already received a telephone call from one of Butler's siblings (whose name he could not recall) stating that the Butler siblings would have a "family meeting" to determine which lawyer the family would hire to represent them in the wrongful death claim. Although less than clear, the gist of Schwartz's testimony on this point was that because he felt the Butler siblings were "cutting out" a potential heir in Lansing, Michigan, he determined that "ethically we cannot represent them [siblings] if there's another heir." Schwartz's senior attorney, Dave Galyon, destroyed his notes when the firm became convinced it did not have a contract with the Butler heirs.

6

economic loss and pain and suffering and, additionally, requested that he be awarded punitive damages for Schwartz's willful and wanton conduct.[6]

¶12. At trial, Schwartz denied all of Bradfield's allegations; however, Schwartz readily acknowledged that Bradfield had been overcharged due to an accounting mistake. Accordingly, Schwartz & Associates acknowledged that judgment should be entered against it in the amount of the investigative charges mistakenly taken out of Bradfield's settlement check.

¶13. Following a five day circuit court trial, the jury found against Schwartz and Associates in the amount of $8,750, but found in favor of Schwartz, individually, concerning Schwartz's personal liability due to the mistaken billing. After the jury returned a verdict for compensatory damages in his favor, Bradfield requested the trial judge to allow the parties to proceed to the punitive damages phase of the trial. Finding there was no genuine issue which would afford the jury the option of awarding punitive damages, the trial judge denied Bradfield's motion for an evidentiary hearing on punitive damages, and a final judgment was subsequently entered as to all issues.

¶14. Bradfield has appealed the trial court's final judgment to this Court, challenging the court's denial of his motion for a punitive damages hearing, and the court's denial of certain

---

[6]Of note, in his prayer for damages against Schwartz, individually, and his firm, Schwartz & Associates, Bradfield included his post-settlement payment of $10,000 to Burwell, which occurred after Burwell's tenure with Schwartz & Associates had concluded. Bradfield claims that his exclusive dealings with Burwell, as a representative of the firm of Schwartz & Associates, led him to believe that Burwell was collecting money from him in his capacity as a representative of the law firm. Conversely, Schwartz claims that Burwell, in essence, duped Bradfield into paying him the money and cites Burwell's testimony that the $10,000 paid to him by Bradfield was a "gift."

requested jury instructions which would have informed the jury of its option to award Bradfield damages by way of a complete disgorgement of the attorneys fees he paid to Schwartz. We now consider Bradfield's arguments.

**DISCUSSION**

¶15. When deciding whether to submit the issue of punitive damages to a trier of fact, the trial court looks at the totality of the circumstances, as revealed in the record, to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard. ***Ross-King-Walker, Inc. v. Henson***, 672 So.2d 1188, 1191 (Miss. 1996). An abuse of discretion standard is used when this Court reviews the trial court's decision on whether a case warrants punitive damages be considered by the trier of fact. ***Doe ex rel. Doe v. Salvation Army***, 835 So.2d 76, 81 (Miss. 2003) (citing ***Hurst v. Southwest Miss. Legal Servs. Corp.***, 708 So.2d 1347, 1351 (Miss. 1998)).

**I.      WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION BY NOT ALLOWING THE ISSUE OF PUNITIVE DAMAGES TO BE SUBMITTED TO THE JURY**

¶16. Bradfield asserts the circuit court erred in not allowing the jury to consider whether Richard Schwartz, individually, and his firm, Schwartz & Associates, should be liable for punitive damages above the compensatory damages awarded. Moreover, Bradfield claims that Schwartz's actions of running a case and charging the runner's expenses to the client were willful and malicious acts and a breach of Schwartz's fiduciary duty to Bradfield. Accordingly, Bradfield asserts there was sufficient evidence produced at trial to warrant having the issue of punitive damages submitted to the jury.

8

¶17.   "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620, 622 (Miss. 1988).   "As a general rule, exemplary or punitive damages are 'added damages' and are in addition to the actual or compensatory damages due because of an injury or wrong.   The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others."   *Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc.*, 759 So.2d 1203, 1215 (Miss. 2000) (citing *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 150-51,141 So.2d 226, 233 (1962)).   *See also Paracelsus Health Care Corp. v. Willard*, 754 So.2d 437, 442 (Miss. 1999).   "In order to warrant the recovery of punitive damages, there must enter into the injury some element of

aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule."   *Id*. (citing 15 Am. Jur., Damages, Sec. 265, p. 698).

¶18.   In *Wise v. Valley Bank*, 861 So.2d 1029 (Miss. 2003), a case involving a bank teller who forged a customer's signature on a bank withdrawal slip and ultimately stole $1,500, we revisited our familiar case law regarding punitive damage awards.   In evaluating the bank's conduct during the ordeal, this Court, in a plurality opinion, reiterated the substance of a punitive damage claim as it applied to the defendant bank:

9

The sole obligation of the bank, absent bad faith in its handling of the matter, was to make restitution. Miss. Code Ann. § 75-4-103 (Rev. 2002). Restitution was immediately made by the bank upon learning of the forgery. The bank did all that it could do to ascertain what actually occurred concerning this incident. There was no bad faith by the bank. Thus, this is not a punitive damages case.

Absent behavior described above which supports punitive damages, no such claim could be made. Miss. Code Ann. § 11-1-65(1)(a) (Rev. 2002) will only allow for punitive damages where a plaintiff shows by clear and convincing evidence actual malice, gross negligence evidencing a willful, wanton, or reckless disregard for the safety of others, or the commission of actual fraud. "In order for punitive damages to be awarded, the plaintiff must demonstrate a wilful or malicious wrong, or the gross, reckless disregard for the rights of others. Punitive damages are only appropriate in the most egregious cases...." *Paracelsus Health Care Corp. v. Willard*, 754 So.2d 437, 442 (Miss. 1999) (citations omitted). The totality of the circumstances and the aggregate conduct of the defendant must be examined before punitive damages are appropriate. *Id*. *See also Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So.2d 1203, 1215 (Miss. 2000); *Ross-King-Walker, Inc. v. Henson*, 672 So.2d 1188, 1191 (Miss. 1996). The act complained of here was committed solely by a single bank teller. The bank's investigation of the matter was certainly complete, thorough and proper. There is also the requirement that there must be ruthless disregard for the rights of others in order to remove the case from the ordinary rule. *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 141 So.2d 226, 233 (1962). *See also Fedders Corp. v. Boatright*, 493 So.2d 301, 311 (Miss. 1986). Considering the totality of the circumstances, the bank's conduct indicates a thorough attempt to satisfactorily resolve the matter. This Court has only allowed punitive damages where the facts are highly unusual and the cases extreme. *South Cent. Bell v. Epps*, 509 So.2d 886, 892 (Miss. 1987). *See also Aqua-Culture Techs., Ltd. v. Holly*, 677 So.2d 171, 184 (Miss. 1996).[7]

865 So.2d at 1034-35.

¶19.    The substantive standards we apply to today's punitive damage claim as asserted by Bradfield are clear.    Moreover, in order for the issue of punitive damages to warrant jury

---

[7]As noted, *Wise* was a plurality decision; however, the punitive damages law espoused in *Wise* is hardly unfamiliar to our jurisprudence.

consideration, Bradfield must show that a question of fact exists as to whether the aggregate of Schwartz's conduct in the handling of his case evidences willful or wanton conduct or the commission of fraud. However, before we can evaluate the evidence and determine the nature of Schwartz's conduct in this case, we must evaluate the procedure implemented by the circuit court under which such evidence was produced. Moreover, it is essential that the court properly allowed the evidence to be considered in accord with the claim the evidence was submitted to prove, and that evidence regarding the plaintiff's claim for punitive damages was properly presented, heard and ruled on according to its substance and merit.

¶20. Miss. Code Ann. § 11-1-65(1)(a)-(e) as it existed at the time this suit was commenced on February 1, 2001, specified the important evidentiary process by which a trial court proceeds when a prayer for punitive damages is included in a complaint. Accordingly, the process requires, inter alia:

> (1) In any action in which punitive damages are sought:
> (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.
> (b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.
> (c) *If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing before the same trier of fact to determine whether punitive damages may be considered.*
> (d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier

of fact shall determine whether to award punitive damages and in what amount.

Miss. Code Ann. § 11-1-65(1) (emphasis added).[8]

¶21. Importantly, our punitive damages statute mandates the bifurcation of the issues of liability/compensatory damages and punitive damages. The statute requires that evidence concerning punitive damages be presented separately at a subsequent evidentiary hearing to take place, if and only if, the jury has awarded some measure of compensatory damages. Thus, the detailed procedure which is outlined above must be meticulously followed because, without an evidentiary buffer at trial, juries will ultimately confuse the basic issue of fault or liability and compensatory damages with the contingent issue of wanton and reckless conduct which may or may not ultimately justify an award of punitive damages.

¶22. If punitive damages are indeed to be awarded within the limitations prescribed by statute, then evidence which does not pertain to compensating the plaintiff but only pertains to proof that a punitive damage award is appropriate, should not be heard by the jury until liability has been determined.[9] Moreover, to try a case any other way would allow a jury to consider punitive damages evidence while determining the compensatory damage award. This is a troubling scenario when one considers that under such procedure, not only is the jury

---

[8]Section 11-1-65(c) has since been amended, but the amended version does not apply to today's case.

[9]We readily acknowledge that it is hardly uncommon for cases to involve "mixed facts" which would be relevant on both the issues of liability and punitive damages. For example, while a defendant driver's intoxication would no doubt be an issue for the jury to consider in making a determination on punitive damages, evidence of the intoxication would likewise be relevant on the issue of liability.

12

subject to possibly returning an inflated compensatory damage award based on consideration of the wrong evidence, it may also forego a finding for the defendant altogether in those situations where the jury may have otherwise seriously considered finding for the defendant, by considering only the appropriate evidence as to fault/liability. In order to preclude this troublesome result, section 11-1-65 insulates a jury from hearing and considering both the issue and the evidence regarding punitive damages until after it has decided the case-determinative issue regarding the culpability of the defendant. Then, and only then, if the jury has determined that compensatory damages are appropriate, is the jury allowed to hear, and possibly consider, evidence regarding the issue of punitive damages.

¶23.    If the jury awards compensatory damages, then an evidentiary hearing is conducted in the presence of the jury. At the close of this second phase of the trial, via an appropriate motion for a directed verdict, the judge, as gatekeeper, then ultimately decides whether the issue of punitive damages should be submitted to the trier-of-fact (jury). If the judge, from the record, should determine, as a matter of law, that the jury should not be allowed to consider the issue of punitive damages, a directed verdict shall be entered in favor of the defendant on the issue of punitive damages, and the case will end. If, on the other hand, the judge should allow the issue of punitive damages to be considered by the jury, then the jury, upon being properly instructed by the judge on the punitive damages issue, may decide to award punitive damages, and if so, in what amount, or the jury may decide not to award punitive damages. If the jury should award punitive damages, then, prior to entry of the final judgment on an award of punitive damages, the judge, pursuant to Miss. Code Ann. § 11-1-65(1)(f)(I), shall "ascertain

13

that the award is reasonable in its amount and rationally related to the purpose to punish what occurred giving rise to the award and to deter its repetition by the defendant and others," by considering the factors set out in Miss. Code Ann. § 11-1-65(1)(f)(ii)(1-4). While the statute does not envision that the judge could increase the amount of the jury's punitive damages award, the judge could unquestionably, consistent with the statute, reduce the amount of the jury's punitive damages award.[10] Finally, just as in any other case, the judge will ultimately decide, via the appropriate post-trial motions, whether it was error to submit the punitive damages issue to the jury.

¶24. Paying close attention to these statutory requisites, we now review the procedure employed in this case. In today's case, after a five-day trial, the jury returned a verdict against Schwartz & Associates in the amount of $8,750. Considering that the dollar amount of Burwell's investigative expenses representing the amount of actual damages was $3753.53, such an award can easily be found to be representative of a compensatory damage award. Accordingly, pursuant to Miss. Code Ann. § 11-1-65(1)(c), the circuit court should have automatically proceeded to the punitive damages phase of the trial, where the judge and jury could then focus on the issue of punitive damages. Moreover, the judge and the jury could have considered all the factors as enumerated in Section 11-1-65. Notably, a punitive damages phase would permit both the judge and the jury to evaluate the conduct of Schwartz &

---

[10]We make this statement remembering that section 11-1-65(1)(f)(ii) states that "[i]n determining whether the [punitive damages] award is *excessive*, the court shall take into consideration the following factors..." (Emphasis added). There is no statutory requirement that the trial judge consider whether the jury award of punitive damages is inadequate.

14

Associates in light of the standards of ethics and professionalism that control a firm, and the lawyers within the firm, in the practice of law in this State. *See also* Miss. Code Ann. § 73-3-35 (Rev. 2004).[11]

¶25.  Based on our clear procedural mandate and the jury's determination to award compensatory damages, we find the circuit court erred when it failed to conduct an evidentiary hearing on the issue of punitive damages pursuant to the statutory mandates. Moreover, we find that when the jury returned a verdict which resulted in a compensatory damages award, a punitive damages phase of trial should have automatically proceeded, consistent with the applicable statutory provisions.  Accordingly, during this second phase of this bifurcated trial, the jury would have received evidence regarding the conduct of the law firm of Schwartz & Associates in its handling of the Bradfield case.

¶26.  It is essential that the two different standards of proof required by the completely different types of damages be separated and that the trial judge, as the gatekeeper of the evidence, be allowed to consider the substantive proof specific to each standard separately.

---

[11]We are mindful of the fact that Bradfield asserts that, on the issue of punitive damages, the jury should have been allowed to consider evidence on his claims that (in the words of Bradfield and his counsel) Schwartz (1) paid a runner to run Bradfield's case; (2) cheated his client despite protests from a firm employee; (3) ignored his "last chance" to not cheat his client; (4) tried to conceal his fraud by "shutting up" Mike Davis; (5) maintained a program of paying runners ten percent of the attorneys fees collected; (6) standardized a system that defrauded all his clients; and, (7) was not mistaken on the fact that he was paying a runner in Bradfield's case.  We are also mindful of the fact that in today's appeal, the issue of professional and/or ethical violations on the part of Schwartz is not before us, and in all fairness, there is disputed testimony on this issue, including that of Davis, who, at the time of trial, had his own pending litigation against Schwartz.  As an appellate court, we unquestionably are not about the business of judging the credibility of witnesses.

Moreover, a trial judge must be given the procedural impetus to properly preserve the issue of punitive damages, and the inflammatory evidence that often accompanies it, for the perhaps rare and egregious case where the judge deems consideration of such damages appropriate. It follows that the imposition of strict procedural guidelines is the only way to insure that a damage award is commensurate with, and limited to, the damages issue directly before the trier of fact.

¶27. Thus, we are constrained as a matter of law to find that this issue, to the extent discussed, has merit, in that the trial court failed to follow the correct procedures mandated by statute for a bifurcated trial when confronted with a case involving a claim for punitive damages, after the jury had returned a verdict for compensatory damages.[12]

## II. WHETHER THE CIRCUIT COURT ERRED IN REFUSING JURY INSTRUCTIONS P-7 AND P-13 AND NOT ALLOWING THE JURY TO CONSIDER DISGORGEMENT OF THE SUM OF SCHWARTZ'S ATTORNEYS FEES AS PART OF BRADFIELD'S DAMAGES.

¶28. Based on our disposition of Issue I, we deem it unnecessary to address this issue.

### CONCLUSION

¶29. Miss. Code Ann. § 11-1-65(1)(c) (Rev. 2002) expressly provides that if a properly instructed jury returns a verdict for compensatory damages against a party, the trial court "shall

---

[12]As we have already noted, had the trial judge in today's case permitted the parties to present evidence in the punitive damages phase of the trial, at the conclusion of the presentation of the evidence in the punitive damages phase of the trial, the trial judge would have had the opportunity to determine, based on the evidence and the applicable law, whether the issue of punitive damages should be submitted to the jury.

16

promptly commence an evidentiary hearing before the same trier of fact to determine whether punitive damages *may be considered*." (Emphasis added). Because the jury returned a verdict for the sum of $8,750 in favor of Bradfield and against Schwartz & Associates, and because the trial court failed to promptly commence an evidentiary hearing before the same jury in order to determine whether punitive damages may be considered, the trial court erred, thus requiring us to reverse and remand.

¶30.     To give guidance to the trial court and the parties upon remand, procedurally this case is in the posture that compensatory damages have already been awarded against Schwartz & Associates, and a jury verdict has been rendered in favor of Schwartz, individually. Thus, the issue of compensatory damages has already been determined. Acknowledging that on remand, it is impossible for the same jury to hear this case, the trial judge shall cause summons to be issued for a venire according to statute, and a new trial jury shall be selected. Both Bradfield and Schwartz & Associates shall be given the opportunity to present evidence before the jury on the issue of punitive damages. Just as in any other case, at the conclusion of the presentation of the evidence, the trial judge will be confronted with the issue of whether to allow the jury to consider the issue of punitive damages. If the judge, from the record before him, should determine, as a matter of law, that the jury should not be allowed to consider the issue of punitive damages, a directed verdict shall be entered in favor of the defendant on the issue of punitive damages, and the case will end. If the judge should allow the jury to deliberate on the issue of punitive damages, a properly instructed jury would then be permitted to determine whether the plaintiff is entitled to an award of punitive damages, and if so, in what

17

amount. If the jury determines that the plaintiff is not entitled to punitive damages, it may say so by its verdict. If, on the other hand, the jury should award punitive damages, then the judge shall follow the procedures mandated by Miss. Code Ann. § 11-1-65(1)(f)(i)(ii) (1-4), prior to entering judgment. Any final judgment entered pursuant to these proceedings shall be subject to the same scrutiny by the trial judge via the customary post-trial motions. *See Paracelsus Health Care Corp. v. Willard*, 754 So.2d 437 (Miss. 1999) (*Willard II*); *Willard v. Paracelsus Health Care Corp*., 681 So.2d 539 (Miss. 1996) (*Willard I*).

¶31. For the reasons stated, the judgment of the trial court on the issue of punitive damages is reversed, and this case is remanded to the Circuit Court for the First Judicial District of Hinds County for proceedings consistent with this opinion.

¶32. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. EASLEY AND GRAVES, JJ., NOT PARTICIPATING.**